(No. 28931.—

THOMAS ALVA BRADY *et al.*, Appellants, *vs.* CLARE LUCILLE PAINE *et al.*, Appellees.

*Opinion filed November 21, 1945.*

HUTTON, CLARK & HUTTON, of Danville, for appellants.

RALPH ROUSE, of Danville, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by the plaintiffs from a decree of the circuit court of Vermilion county. The cause is an action for partition and accounting. It involves the construction of the will of Clarence Melvin Brady. Appellants filed a complaint for partition of the southeast quarter ($\frac{1}{4}$) of the southeast quarter ($\frac{1}{4}$) of section 3, township 18 north, range 12 west of the second principal meridian, in Ver-

milion county, Illinois. The complaint alleged that appellants were the owners, as tenants in common with appellees, Clare Lucille Paine and Phillip Agnew Brady, of the undivided one-half interest in said land. They claim title by descent as heirs of Clarence Melvin Brady. It was further alleged that appellee, Clare Lucille Paine, was the owner of the other undivided one-half interest in said forty-acre tract. Appellees, except Phillip Agnew Brady, filed their answer to the complaint, denying that appellants had any interest in said land. They also filed a counterclaim in which they asked for a construction of the last will and testament of Clarence Melvin Brady. By the counterclaim they further alleged that Clare Lucille Paine was, under the will of Clarence Melvin Brady, deceased, the sole owner of the entire forty acres of land.

Clarence Melvin Brady executed his last will and testament on August 1, 1924. By his will, he gave all of his real estate located in Vermilion county to a trustee, with directions to rent and manage the same and pay to his wife, during her lifetime, the net income derived therefrom. He further directed the trustee, at the death of his wife, to convey the real estate in separate, specifically described tracts to his four children. The provision of his will with reference to the gift over at the death of his wife to his daughter, Clare Lucille Paine, which is the provision here involved, in so far as material, is as follows: "To my daughter, Clare Lucille Paine, my undivided one-half interest in the East Half ($\frac{1}{2}$) of the Southeast Quarter ($\frac{1}{4}$), Section 3, Township 18 North, Range 12 West of the Second Principal Meridian."

On October 5, 1925, he executed a codicil to his will. The trustee named in the original will having died, he substituted as trustee, the Second National Bank of Danville, Illinois. By the codicil he made no changes in the provision of the will here involved. He died on November 28, 1941. His wife died shortly after his death. The will

was duly admitted to probate by the probate court of Vermilion county. The Second National Bank of Danville was appointed executor. The estate was fully administered and the administration closed. On October 2, 1943, the Second National Bank of Danville qualified as trustee under the will.

At the time the will was executed, the testator was the owner of a one-half undivided interest in the east half of the southeast quarter of said section 3. The widow and children of George M. Brady were the owners of the other one-half undivided interest therein. For convenience this tract will be hereafter referred to as the eighty-acre tract.

By a quitclaim deed dated October 2, 1928, the owners of the other one-half undivided interest in the eighty-acre tract conveyed to the testator all their interest in the south half of said tract. This is the southeast quarter of the southeast quarter of the section and is the land involved in this lawsuit. By a like deed dated October 10, 1928, the testator conveyed to the owners of the other one-half undivided interest in said eighty-acre tract all of his interest in the north half of said tract. By these conveyances between the cotenants, at the time of his death the testator was seized in fee simple of the south half of the eighty-acre tract, and had conveyed to his cotenants all of his interest in the north half of said tract.

It is the contention of appellants that the testator's conveyance to his cotenants of his interest in the north half of the eighty-acre tract, and his acquisition of the interest of his cotenants in the south half of the eighty-acre tract, operated as a partial ademption of the devise to Clare Lucille Paine; that at the time the will was made he did not own both undivided halves of the south forty acres; that the one-half undivided interest in the south half of the eighty-acre tract, conveyed to the testator by his cotenants, was property acquired by him subsequent to

the making of the will, and did not pass as a part of the devise to his daughter, Clare Lucille Paine. They contend that only the one-half undivided interest in the south half of the eighty-acre tract owned by the testator at the time he executed his will passed under said provision of the will; that the one-half interest in said south half, which was quitclaimed to the testator by his cotenants, passed under the law of descent to his four children, and by reason thereof, appellants are the owners each of a one-eighth undivided interest in said south half.

Appellees contend that the conveyances between the cotenants merely operated as a voluntary partition of the eighty-acre tract between cotenants, as a result of which the testator became the owner of the south half of the eighty-acre tract, in severalty; that this did not operate as a partial ademption of the devise to Clare Lucille Paine. The trial court entered a decree in accordance with the contentions of appellees. It decreed that Clare Lucille Paine was the sole owner of the south half of the eighty-acre tract and directed the trustee to convey the same to her in accordance with the will.

The sole question presented by the record is: where a testator, who is the owner of a one-half undivided interest in a tract of land as tenant in common, by his will devises his undivided interest by specific devise, does the voluntary partition between the cotenants, whereby there is set off to him in severalty one-half of the tract, operate as an ademption of the devise? In other words, does the entire tract which was set off to him in severalty by the conveyance of his cotenants pass under such devise, or is the will operative to pass only the one-half undivided interest in the tract which was set off to him in severalty by the voluntary partition, and which was owned by him at the time he executed his will?

Ademption of a specific legacy or devise is the extinction, alienation, withdrawal or satisfaction of the legacy

or devise by some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject matter of the devise which interferes with the operation of the will. It signifies an alteration in the subject matter of the legacy or devise. *Tanton* v. *Keller*, 167 Ill. 129; *Wiggins* v. *Cheatham*, 143 Tenn. 406, 225 S.W. 140, 13 A.L.R. 169; *American Trust Co.* v. *Balfour*, 138 Tenn. 390, 198 S.W. 70, L.R.A. 1918D 536.

The doctrine of ademption applies to devises of real estate as well as to bequests of personal property. (*Lewis* v. *Hill*, 387 Ill. 542.) The rule is well settled that if the testator, in his lifetime, disposes of property specifically devised by him, this will operate as a revocation of the devise. If he conveys only a part of the lands so devised, such conveyance will operate as an ademption of the devise to the extent of the lands conveyed. It is also the rule that a devise of a designated fractional interest in real estate, by specific description, will not be held to include an additional fractional interest therein which the testator thereafter acquired. *Gleason* v. *Norton*, 226 N. Y. 679, 123 N. E. 886.

Appellants do not contend that the devise was entirely revoked. They concede that the one-half interest in the south forty acres which the testator owned, as tenant in common, at the time he executed the will, passed under the will. The position of appellants is that the testator having by his will devised his undivided one-half interest in the eighty-acre tract, and thereafter having conveyed his undivided one-half interest in the north forty acres of that tract, the devise was adeemed to the extent of the one-half part thereof, and that the will is only operative as to the one-half interest in the south forty acres, which was owned by the testator at the time he executed the will; that the other one-half interest in the south forty acres, which was set off to him by the quitclaim deed from his cotenants, was acquired under that deed after he made the

will and did not pass by the specific devise to his daughter, Clare Lucille Paine. As to the one-half interest in the north forty acres, which he conveyed by quitclaim deed to his cotenants, the parties agree, of course, that it did not pass under the will for the reason that the testator owned no interest in the north forty acres at the time of his death.

The decisive question is whether the voluntary partition of the eighty-acre tract between the cotenants constituted such an alteration of the estate devised to Clare Lucille Paine as to operate as a partial ademption of such devise. At the time the will was executed the testator owned a one-half undivided interest in the eighty-acre tract. Such ownership was not segregated, but extended to the entire tract. His cotenants collectively owned a like interest. Joint ownership of tenants in common is subject to certain legal incidents not applicable to estates owned in severalty. The liability to be divested by partition of the lands is an incident which the law affixes to the seizin of cotenants. The inchoate right of dower of the wife is subject to that incident. Where the husband's cotenancy is, by either voluntary or involuntary partition, turned into an estate in severalty in a part, only, of the land, the wife is remitted to her inchoate right in the land which her husband takes in severalty by such partition. (*Cole* v. *Cole,* 292 Ill. 154; *Davis* v. *Lang,* 153 Ill. 175.) The same rule applies to mortgagees and creditors of cotenants. The effect of a partition is to substitute for an undivided interest in the whole land the portion set off to the debtor in severalty. *Rochester Loan and Banking Co.* v. *Morse,* 181 Ill. 64; *Thompson* v. *Frew,* 107 Ill. 478; *Loomis* v. *Riley,* 24 Ill. 307.

When a voluntary partition is made, each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part, and he does not derive title or interest from his cotenant by his transfer so that either can be said to hold under the other.

A decree or judgment in partition has no other effect than to sever the unity of possession and does not vest in either of the cotenants any new or different estate. After the partition each party has precisely the same title and estate which he had before, but that which before was a joint possession is turned into a several one. The same is true of a voluntary partition. Each party transfers or releases the interest which he had in all the land for an exclusive and fixed possession in a part and he does not derive title or interest from his cotenant by such transfer so that either can be said to hold under the other. *Cole* v. *Cole,* 292 Ill. 154; *Cochran* v. *Cochran,* 277 Ill. 244; *Casstevens* v. *Casstevens,* 227 Ill. 547.

In 1 Jarman on Wills (5th American Ed.) p. 178, the author, in discussing the rule that a conveyance, either partial or total, by the testator, of lands specifically devised, will operate as an ademption or revocation of the devise, notes that there are two well-defined exceptions to the rule: "The first is in the case of a partition between tenants in common, or coparceners, which, by whatever kind of assurance effected, does not, even at law, revoke a prior devise, provided the conveyance be confined to the object of the partition, merely assuring to the testator in the lands allotted to him in severalty an estate precisely corresponding to that which he previously had in his undivided share." The same rule is stated in 28 R.C.L. p. 347, sec. 342, and in 4 Paige on Wills, p. 377, par. 4. This rule was followed and applied in *Duffel's Lessee* v. *Burton,* 4 Harrington (Del.) 290, and *Weber* v. *Dickerson,* 248 Ky. 552. An analogous rule was recognized and followed by this court in *Eckardt* v. *Osborne,* 338 Ill. 611.

This rule is supported by both reason and logic. In the case of voluntary partition between cotenants, neither acquires any lands which he did not already own. Thereafter he holds title, not under the deed of his cotenant, but under his original title. Applying that rule to this

case, the result is that by the voluntary partition the testator acquired nothing. Before the quitclaim deeds were made he owned an undivided one-half interest in the eighty-acre tract. After the partition he owned precisely 'the same quantity and estate. The only effect of the partition was to transfer his ownership from the undivided interest in the entire tract to ownership in severalty of the south half of the tract. He still owned the one-half interest in the eighty-acre tract which he already owned and which, by his will, he had devised to his daughter, Clare Lucille Paine.

But it is pointed out by appellants that in the deed from the testator conveying his interest in the north forty acres of the eighty-acre tract it was provided: "It being the intention hereby to convey to the said Maude I. Brady a one-third interest· in and to the above described real estate for life and that subject to said one-third interest for life, the balance of said title in fee simple to go to the other grantees." It is said that by inserting this clause in that deed, the effect was something more than the mere partition of the land; that there was an attempt to vest a life estate in Maude I. Brady. Frankly, we do not follow this argument. The record shows that Maude I. Brady and the other grantees in the quitclaim deed executed by the testator, quitclaiming his ·interest in the north forty acres, were the widow and children of George M. Brady, deceased. The record justifies the assumption that they inherited their undivided one-half interest in the eighty-acre tract from George M. Brady, their husband and father. That being true, and the date of the death of George M. Brady not appearing in the record, and there being no showing that Maude I. Brady had waived her dower in the lands owned by her husband at the time of his death, it may be assumed that she owned a life estate in the one-third part of the interest vested in her husband at the time of his death, as her dower. In that event, his children

would own the entire interest vested in George M. Brady at the time of his death, subject to the dower interest vested in their mother. The deed, therefore, from the testator conveying his interest in the north forty was made for the purpose of releasing and quitclaiming his interest therein to the grantees named in said deed in the exact proportions of their interests in the undivided one-half interest in the eighty-acre tract, as surviving widow and children of George M. Brady, deceased. Moreover, the question what the testator intended to convey or did convey by his deed to the north forty acres is wholly immaterial. He did convey to his cotenants, collectively, all of his interest in the north forty acres. The only land here involved, however, is the south forty. Even though certain limitations or restrictions had been inserted in the deed to the north forty, such limitations and restrictions are wholly immaterial in this case. We are only interested here in the effect of the deed to the testator from his cotenants, quitclaiming their interest in the south forty acres. The conveyance to the testator of the interest of his cotenants in the south forty was unlimited and unrestricted, and conveyed to him all their interest, as cotenants, in that tract of land. These deeds were obviously made for the sole purpose of effecting a voluntary partition by setting off to the testator the south forty, in severalty, and the north forty to his cotenants, in severalty. The deed to the testator conveyed nothing to him which he did not own before that deed was made.

On the trial of this cause, appellees introduced a witness who was permitted to testify as to conversations he had with the testator in his lifetime, tending to show the intention which he had in mind when he executed his will. Appellants objected to this testimony, and have assigned as error, the action of the trial court in overruling their objections. We do not think it is necessary to determine the competency of such testimony. It will be presumed

that the chancellor considered only such evidence as was proper. The rule is that a decree will not be reversed because incompetent evidence may have been admitted, if there is in the record sufficient competent evidence to sustain the decree. (*Richardson* v. *Eveland,* 126 Ill. 37.) Disregarding entirely the evidence objected to as incompetent, we think there is ample evidence in the record to sustain the decree. If all the testimony of the witnesses be entirely disregarded, upon the stipulations and documents in evidence, and the application of the applicable rules of law to the facts shown by such stipulations and documents, the court could not have properly reached any other conclusion than that expressed in the decree.

The decree of the circuit court of Vermilion county is affirmed.

*Decree affirmed.*