*In re* ESTATE OF KATHERINE KOLBINGER, Deceased (Marguerite Hendrixson, as Adm'x of the Estate of Harold Kolbinger, Respondent-Appellant and Cross-Appellee; Home State Bank of Crystal Lake, as Adm'r of the Estate of Katherine Kolbinger, Petitioner-Appellee and Cross-Appellant).

Second District   No. 2—87—1111

Opinion filed October 7, 1988.

316

Ray & Glick, Ltd., of Libertyville (Kenneth J. Glick, of counsel), for appellant.

Militello, Zanck & Coen, of Crystal Lake (Patrick D. Coen, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Petitioner, the estate of Katherine Kolbinger, petitioned for citations to discover assets against Home State Bank of Crystal Lake (Home State Bank) and respondent Marguerite Hendrixson, administratrix of the estate of Harold Kolbinger, seeking the recovery of two certificates of deposit and a savings account. Following a bench trial, the circuit court of McHenry County entered orders that Katherine Kolbinger's estate was the owner of these three accounts, that respondent was to turn over to petitioner $39,922.79, being the proceeds from one of the certificates of deposits cashed by Harold Kolbinger, and that the other certificate of deposit and the savings account be distributed as a specific bequest under Katherine Kolbinger's will.

Respondent contends on appeal that (1) the circuit court erred in permitting petitioner to proceed against respondent under a citation to discover assets after the period for filing claims against the estate of Harold Kolbinger had expired; (2) a citation to discover assets

could not lie against respondent to recover the certificate of deposit which had been allegedly converted and commingled with Harold Kolbinger's other assets; and (3) the finding that the certificate of deposit cashed by Harold Kolbinger did not belong to him was against the manifest weight of the evidence. Petitioner has filed a cross-appeal contending that the circuit court erred in finding that the other certificate of deposit and the savings account stood in the place of property destroyed by fire and were, therefore, specifically bequeathed under Katherine Kolbinger's will and not adeemed.

Katherine Kolbinger died on December 3, 1984. She was survived by three children, Harold Kolbinger, Arthur Kolbinger and Loretta Fischer, and by three grandchildren, Frank Kolbinger, III, Diane Kolbinger and Karen Kolbinger. On February 15, 1985, a petition was filed in the circuit court of McHenry County to admit Katherine's will to probate. The will was admitted to probate and Home State Bank was appointed independent executor of the estate.

Article VIII of the will specifically devised a parcel of real property located at 101-103 Elmhurst Street in Crystal Lake to Arthur Kolbinger and Harold Kolbinger. Subsequent to the execution of Katherine Kolbinger's will, improvements on the property were damaged by fire in early 1984, and the insurer which covered the property issued a check for $49,000 for the damage.

Katherine Kolbinger's son, Harold, lived with her at her home in Crystal Lake from 1961 until 1979. In August 1979, Katherine Kolbinger was admitted to a nursing home where she resided until her death. While Katherine Kolbinger was in the nursing home, Harold Kolbinger continued to reside in her Crystal Lake home. Harold Kolbinger paid the bills for the nursing home and managed Katherine Kolbinger's property in Crystal Lake.

Several members of Katherine Kolbinger's family testified as to the degree to which Harold Kolbinger was responsible for Katherine Kolbinger's care prior to the time she entered the nursing home. According to their testimony, Harold more likely than not shopped for Katherine Kolbinger from the early 1970's, and by 1978, Harold Kolbinger was caring for Katherine Kolbinger on a day-to-day basis.

These witnesses also testified as to Katherine Kolbinger's physical condition both before and after she entered the nursing home. The testimony disclosed that for several years prior to entering the nursing home Katherine Kolbinger did not recognize certain close family members and that she wouldn't feed herself or use the washroom.

While in the nursing home, Katherine Kolbinger was unable to walk or feed herself, and she had to have total care. At the nursing

home, Katherine Kolbinger was uncommunicative, babbling words that made no sense, or speaking in German. Nursing home records state that upon her admission to the home Katherine was suffering from arteriosclerotic brain syndrome and was confused.

At the time of Katherine Kolbinger's death there were two certificates of deposit and a savings account in the name of Katherine Kolbinger and Harold Kolbinger jointly at Home State Bank. The savings account had been in existence prior to December 27, 1975. On that date, a signature was added to the account's signature card making the account a joint account between Katherine Kolbinger and Harold Kolbinger. James Zambon, vice-president of Home State Bank and trust officer in charge of the administration of Katherine Kolbinger's estate, testified that he believed that it was Harold Kolbinger's name which was added to the account on December 27, 1975, because statements on the account showed Katherine Kolbinger's name alone. Deposits were made to the savings account between December 1975 and 1979. No evidence was presented as to the source of those deposits.

Certificate of deposit No. 1385 (CD No. 1385) was issued on November 14, 1981. CD No. 1385 was funded from a CD which was the last of a series of CDs traceable back to a CD purchased in early 1979 with funds from the savings account.

Certificate of deposit No. 4357 (CD No. 4357) was issued on March 31, 1984. This CD was funded with part of the proceeds from insurance on the fire-damaged property of Katherine Kolbinger located at 101-103 Elmhurst Street which Katherine Kolbinger had specifically devised to Arthur Kolbinger and Harold Kolbinger. The balance of the proceeds of the insurance check remained on deposit in the savings account. Interest from CD No. 4357 was deposited in the savings account. At the time of Katherine Kolbinger's death, the savings account totalled $392.47.

John Horeled, who was the initial attorney for Katherine Kolbinger's estate, testified that Harold Kolbinger told him that the savings account and a certificate of deposit containing proceeds from insurance on property owned by Katherine Kolbinger were set up as convenience accounts. Harold Kolbinger also told Horeled that those accounts were assets of her estate and that he had no interest in them.

On December 3, 1984, the day of Katherine Kolbinger's death, CD No. 1385 was closed and a check for $39,922.79, payable to Harold Kolbinger was issued. The evidence concerning how the check was paid is as follows. The check was endorsed by Harold Kolbinger and

the name of Great Lakes Credit Union was stamped on the back. James Zambon, vice-president of Home State Bank, was unable to say, based on his knowledge of bank documents, whether the check was cashed or deposited in an account.

Harold Kolbinger died on January 25, 1985. Letters of office naming Arthur Kolbinger as administrator of Harold Kolbinger's estate were issued February 15, 1985. The inventory of Harold Kolbinger's estate listed zero balances for the savings account and CD No. 4357, stating that these were each "a convenience joint tenancy." Notice of Harold Kolbinger's death was properly published. By order of September 25, 1985, Marguerite Hendrixson was substituted for Arthur Kolbinger as administratrix of Harold Kolbinger's estate. It was stipulated that while administrator, Arthur Kolbinger transferred Harold Kolbinger's assets into a Citicorp savings account and this account was transferred to Marguerite Hendrixson when she replaced him.

On October 11, 1985, petitioner filed a petition for a citation to discover assets against Home State Bank seeking recovery of the two CDs and the savings account. The citation was issued October 24, 1985. On November 27, 1985, petitioner filed a petition for a citation to discover assets against Marguerite Hendrixson, as administratrix of the estate of Harold Kolbinger, seeking recovery of the three accounts. On February 9, 1986, the estate of Katherine Kolbinger filed a petition for partial distribution which provided for distribution of CD No. 4357 and the savings account as residue. Harold Kolbinger's estate filed an objection to the petition, claiming that CD No. 4357 and the savings account should be distributed to Arthur Kolbinger and the estate of Harold Kolbinger under article VIII of Katherine Kolbinger's will, which specifically devised the property at 101-103 Elmhurst Street to Arthur Kolbinger and Harold Kolbinger.

On October 16, 1986, a hearing was held on the citations. On October 28, an order was issued finding CD No. 1385, CD No. 4357, and the savings account did not pass to Harold Kolbinger by right of survivorship upon Katherine Kolbinger's death and were property of Katherine Kolbinger's estate, and ordering the estate of Harold Kolbinger to turn over the sum of $39,922.29, being the proceeds from CD No. 1385, to the estate of Katherine Kolbinger. A second order issued October 28, 1986, found that there was no ademption of the specific devise of the property at 101-103 Elmhurst Street and ordered that the proceeds of CD No. 4357 and the savings account be distributed equally to Arthur Kolbinger and the estate of Harold Kolbinger.

The estate of Harold Kolbinger appeals the order finding that CD

No. 4357 and the savings account are property of Katherine Kolbinger's estate and ordering the turnover of $39,922.29. The estate of Katherine Kolbinger cross-appeals the order that CD No. 4357 and the savings account be distributed to Arthur Kolbinger and the estate of Harold Kolbinger.

Respondent contends first in her appeal from the judgment below that the trial court erred in permitting petitioner to proceed against respondent under a citation to discover assets under section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 16—1) after the period for filing claims against the estate of Harold Kolbinger had expired. Respondent maintains that petitioner should have filed a claim against the estate of Harold Kolbinger pursuant to the provisions contained in article XVIII of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, par. 18—1 et seq.) and that the failure to do so within the six-month statutory claim period for seventh-class claims, as respondent argues is applicable, prevents recovery. Petitioner responds that CD No. 4357 and the savings account were held by the Home State Bank and the citation proceeding for those accounts was against the bank. As respondent only listed those accounts in Harold Kolbinger's estate's inventory as having a zero balance and as being held only for the benefit of Katherine Kolbinger, petitioner argues that respondent cannot contend that the citation proceeding is barred for the failure to file a claim in Harold Kolbinger's estate. Petitioner also responds that section 16—1 of the Probate Act is properly utilized here to determine title or ownership of property belonging to a person whose estate is being administered and which property is in the possession of another.

Section 16—1 of the Probate Act provides, in part, as follows:

"Sec. 16—1. Citation on behalf of estate. (a) Upon the filing of a petition therefor by the representative or by any other person interested in the estate or, in the case of an estate of a ward by any other person, the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) to have concealed, converted or embezzled or to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative or (2) to have information or knowledge withheld by the respondent from the representative and needed by the representative for the recovery of any property by suit or otherwise. The petition shall contain a request for the relief sought. Ill.

Rev. Stat. 1985, ch. 110½, par. 16—1.

The objectives of a citation proceeding under the Probate Act are to obtain the return of personal property belonging to the estate but in the possession of, or being concealed by, others or to obtain information to recover estate property. (*In re Estate of Joutsen* (1981), 100 Ill. App. 3d 376, 380, 426 N.E.2d 942.) The probate court is empowered to determine the title and right of property and enter such order as the case requires. (*In re Estate of Peters* (1966), 34 Ill. 2d 536, 539-40, 217 N.E.2d 3.) Although the failure to file a claim within the statutory period bars the claimant from participating in the inventoried assets of the estate (*In re Estate of Garawany* (1980), 80 Ill. App. 3d 401, 404, 399 N.E.2d 1024), a proceeding which places in issue a decedent's title to specific assets is not considered to be a claim in the context of probate law. It is not subject to the statute limiting the time in which to file claims. (*Illinois Masonic Children's Home v. Flynn* (1982), 109 Ill. App. 3d 744, 747, 441 N.E.2d 126; *Taylor v. Continental Illinois National Bank & Trust Co.* (1975), 26 Ill. App. 3d 610, 612, 325 N.E.2d 444.) Where a decedent had no title to specific property, that property is not an asset of the estate and actions concerning that property are not subject to the claims limitation period. *In re Estate of Shandling* (1975), 32 Ill. App. 3d 513, 515, 336 N.E.2d 250.

To the extent that the instant citation proceeding involved specific property, it is properly brought. The two accounts in existence at the time of the citation proceeding, the savings account and CD No. 4357, were specific property alleged to be in possession of Home State Bank and were still in existence at the time the citation was served. Title to these specific assets was at issue and proceedings to determine title were not claims under article XVIII subject to the six-month limitation period of section 18—12 of the Probate Act. See *Illinois Masonic Children's Home*, 109 Ill. App. 3d at 747, 441 N.E.2d at 128.

On the other hand, CD No. 1385 was not in existence at the time of the citation proceeding, but had been cashed on the day of Katherine Kolbinger's death and a check issued for $39,922.79 to Harold Kolbinger. That check was endorsed by Harold Kolbinger and the name of Great Lakes Credit Union was stamped on the back. The record further reveals that this check and another check for $410 were deposited by Harold Kolbinger in the Great Lakes Credit Union on December 6, 1984, three days after Katherine Kolbinger's death. While, following the hearing, a citation was issued against Great Lakes Credit Union, it was subsequently dismissed. At the hearing,

there was no further effort to identify these funds. Moreover, several accounts at Great Lakes Credit Union were listed in the inventory of Harold Kolbinger's estate.

Thus, CD No. 1385 was not a specific asset which could be identified and was subject to the limitation period of the Probate Act. That part of the circuit court's judgment ordering respondent to turn over $39,922.79 with interest to petitioner was erroneous and is reversed.

In view of our holding reversing the circuit court on the aforementioned basis, we need not consider respondent's alternative arguments that citation proceedings could not lie against her, as administratrix of Harold Kolbinger's estate, for Harold Kolbinger's alleged conversion of CD No. 1385, which he had commingled with his other assets, and that the court's finding that CD No. 1385 did not belong to Harold Kolbinger was against the manifest weight of the evidence.

■ One other point deserves brief mention. After the appellate briefs were filed, petitioner moved for leave to file a memorandum citing additional authority. We allowed petitioner to cite the additional authority of *Tulsa Professional Collection Services, Inc. v. Pope* (1988), 485 U.S. 478, 99 L. Ed. 2d 565, 108 S. Ct. 1340, but struck the argumentative memorandum in support of the motion. After reviewing this case, it appears that the decision addresses an issue not raised in the circuit court or in the appellate briefs and is waived. See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500-01, 475 N.E.2d 872.

We now consider petitioner's cross-appeal. It is petitioner's contention that CD No. 4357 and the savings account belonging to the estate of Katherine Kolbinger should pass as part of the residue of the will of Katherine Kolbinger. The circuit court had found that these two accounts representing insurance proceeds on property specifically devised under Katherine Kolbinger's will to Arthur and Harold Kolbinger, a residence at 101-103 Elmhurst Street, Crystal Lake, Illinois, which was destroyed by fire in 1984 during Katherine Kolbinger's lifetime, stood in the place of the devised property and passed as a specific bequest under the will. Petitioner argues that under Illinois law if property specifically devised is lost, destroyed, or conveyed prior to the testator's death, the devise is adeemed. Respondent responds that since the decision in *Lewis v. Hill* (1944), 387 Ill. 542, 56 N.E.2d 619, the court has required an act of the testator before an ademption of a devise or legacy would be declared.

■ The term ademption literally means removal or extinction. (*Tanton v. Keller* (1897), 167 Ill. 129, 139.) Where a specific article is bequeathed and such article is lost, destroyed, or disposed of by the

testator during his lifetime, so that it is not in existence or does not belong to him at his death, there is an ademption of such bequest. (*Tanton,* 167 Ill. at 139; *Lewis v. Hill* (1944), 387 Ill. 542, 545, 56 N.E.2d 619.) While in Illinois the doctrine of ademption was applied originally to specific legacies, there now exists no good reason for any distinction in this regard between a bequest of personal property and a devise of real estate. *Lewis,* 387 Ill. at 545, 56 N.E.2d at 621.

■ In *Brady v. Paine* (1945), 391 Ill. 596, 63 N.E.2d 721, in the context of a voluntary partition of devised property, our supreme court indicated that ademption requires "some act of the testator by which an intention to revoke is indicated; the doing of some act with regard to the subject matter of the devise which interferes with the operation of the will." (391 Ill. at 600-01, 63 N.E.2d at 723; see also *Lewis v. Hill* (1944), 387 Ill. 542, 56 N.E.2d 619.) Thus, ademption by a voluntary act of the testator requires some indication of an intention to revoke. (*Hobin v. O'Donnell* (1983), 115 Ill. App. 3d 940, 942, 451 N.E.2d 30.) In the instant case, however, the property in question was not in existence at Katherine Kolbinger's death not because of some voluntary act on her part, but because of an involuntary event, the destruction of the improvements on the property by fire.

While no Illinois cases have specifically addressed the significance of the testator's intent to the issue of ademption where the property was destroyed, not by a voluntary act of the testator, but by some involuntary event or accident, we nonetheless believe that the rule of *Brady v. Paine* requiring an indication of intent to revoke is equally applicable to these circumstances. Furthermore, cases from other jurisdictions have found no ademption to occur when property subject to a specific devise or bequest was destroyed by accident and there was no indication that the testator intended to revoke the gift.

■ It is reported in *In re Estate of Wolfe* (Iowa 1973), 208 N.W.2d 923, that there is a split of authority over the significance of intent in resolving ademption problems. The minority view adheres to a rigid identity theory, concerning itself solely with the presence of the property in the estate at the time of death. Intent is immaterial under this view. The majority rule gives consideration and effect to circumstances which explain why the property is not among the decedent's assets at the time of his death. Where there is a voluntary sale or other disposal of specifically devised property by the testator during his lifetime, there is an ademption. However, where the property in question is missing from the estate because of some act or event involuntary as to him, there is no ademption. (*Wolfe,* 208 N.W.2d at 924.) The court in *Wolfe* went on to hold that a testamentary gift of

an automobile which was destroyed in an accident in which the testator was killed was not adeemed, adopting the rationale that bequests are adeemed only where such an intention appears on the part of the testator, not when, as a mere matter of accident, the bequest has been changed in specie. The real question is whether the testator's testamentary disposition did, or did not, remain with reference to the particular thing embodied in the specific bequest or its proceeds, the same as it was the last moment he was able to exercise a testamentary disposition. *Wolfe*, 208 N.W.2d at 925.

In *White v. White* (1969), 105 N.J. Super. 184, 251 A.2d 470, the reviewing court held that probable intent of the testator was the determinative factor where a fire partially destroyed premises specifically devised and where the testator later died from the incident without having the capacity in the interval to change his will. The court relied on New Jersey law, as well as decisions in other jurisdictions, for the proposition that "[w]here a testator has specifically devised real property upon which a house stands, which house is destroyed or damaged by fire before death and the testator dies without regaining capacity to indicate a contrary intention, the proceeds of the fire insurance on the house replace the house and pass under the devise. [Citations.]" *White*, 105 N.J. Super. at 189, 251 A.2d at 473.

█ In the instant case, the devised premises were destroyed by fire in early 1984 and the insurance proceeds were paid in late March 1984. During that period of time and thereafter until her death on December 3, 1984, Katherine Kolbinger was in a nursing home suffering from arteriosclerotic brain syndrome and, although not legally declared incompetent, was clearly under the evidence unable to manage her affairs. We believe the rationale in both *Wolfe* and *White* cited above properly addresses the issue of ademption in terms of intent of the testator where the bequest is destroyed by an involuntary act. Under the circumstances here, we hold that the insurance proceeds on the devised premises, as reflected by CD No. 4357 and the savings account, replaced the devised premises and pass under the specific devise in Katherine Kolbinger's will, where Katherine Kolbinger, since the time of the destruction of the property until her death, had remained unable to manage her affairs and did not have the capacity to indicate a contrary intention from that expressed in her will. Thus, there is no ademption under the facts in this case.

█ While we note that petitioner apparently has raised in cursory fashion in its appellate brief the argument that Harold Kolbinger's acts in cashing the insurance check and not accounting for the entire proceeds demonstrate he has "unclean hands" and

should not be entitled to equitable relief, we need not further consider this contention as no citation of authority is presented, the circuit court did not make any finding on this point, and the basis for the lower court's decision was to determine if ademption applied, not to provide equitable relief.

For the foregoing reasons, that portion of the judgment of the circuit court ordering respondent to turn over $39,927.79 with interest to petitioner is reversed. The remaining portions of the judgment are affirmed.

Reversed in part, affirmed in part.

INGLIS and DUNN, JJ., concur.