**David BOYLE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0507–CR–369.

Court of Appeals of Indiana.

July 31, 2006.

Christina Rose Klineman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

David Boyle appeals the sentence he received after pleading guilty to burglary, criminal deviate conduct, and attempted rape, all class A felonies. We reverse and remand for resentencing.

### Issues

Boyle presents one issue: whether the "court erroneously considered factors which should have been specifically plead, tried to a jury, and proved beyond a reasonable doubt in light of" *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), *cert. denied*, and which resulted in an inappropriate sentence. Appellant's Br. at 1.

The State does not address the propriety of the aggravating factors under *Blakely*, but instead asserts waiver and raises the following issue on cross-appeal: whether the trial court abused its discretion by granting Boyle's motion for permission to file a belated direct appeal.

### Facts and Procedural History

According to the factual basis for Boyle's plea agreement,

On November 28, 1992, at approximately 4:26 hours—or 4:26 a.m., [L.F.] reported that she had been made to perform oral sex on a male who gained unlawful entry at her residence at 4—5040 Mindy Drive in Lawrence, Marion County, Indiana. [L.F.] was at home and had gone to bed and fallen asleep with the television and bedroom lamp on. A short time later, she woke up and turned off both the television and the lamp. She was awakened by a male in her bedroom rubbing her hair, who placed a knife in her mouth. The suspect · was wearing a stocking wrapped around his face and beard. The suspect's eyes were the only thing she could clearly see. The suspect told her she was going to perform oral sex on him, and if she cooperated, she would not get hurt. [L.F.] was forced to lay on her stomach on the bed and told to put her hands behind her back. The suspect then bound [L.F.'s] hands with a leather shoestring. [L.F.] was then grabbed by the hair, pulled upward and toward the edge of the bed. At that time, the suspect, while holding a knife against her throat, sodomized [L.F.] by placing his penis in her mouth. The suspect then told her he was dissatisfied with her performance, rolled her over and spread her legs. He stated he was going to have intercourse with her. At this point, [L.F.] managed to get her left hand loose, pushed him off and grabbed the knife blade with her hands, causing various lacerations to her fingers and palms of her hands. She struggled by fighting, kicking, biting and screaming with him. He left once he was able to get his shoe from her. Lawrence Police Department was then summoned to 4050 Mindy Drive by a plea for help by [L.F.]. En route to the address, Officer Donald Lytle, of the Lawrence Police Department, observed a vehicle eastbound on East 52nd Street that had left the entrance of the mobile home park where the residence of [L.F.] was locat-

ed. Officer Lytle pursued the vehicle in—and stopped it in the area of 42nd and German Church Road. He then observed blood on the driver's hands, as well as on his clothing. There was physical evidence in the vehicle that matched the information Lytle had received from the victim. Upon bringing the suspect—at that point, [L.F.] was brought to the scene, where she identified the person who—whose identity had learned to be [Boyle] as the person who was in her house and had performed on—who had forced her to perform oral sex on him and attempted to rape her. At the Lawrence Police Department, Officer Lytle observed a scratch on the suspect's left leg matching the description given by the victim. The vehicle—during the investigation, Officer Robert Jones learned that forced entry had been made to [L.F.'s] home through a south side living room window which had been forced open and steps from a rear door had been placed at the bottom of that window for easier access. It was later learned through the course of the investigation that [Boyle's] fingerprints were found on a light bulb next to the lamp from [L.F.'s]—in [L.F.'s] bedroom and that there were—that a knife matching a knife owned by LeAnn Boyle—matching a set of knives owned by LeAnn Boyle was a match, who is— who was, at that time, the wife of [Boyle]. [L.F.] stated that she had met [Boyle] at the bar Southern Lights earlier that evening. He did not enter the residence with her at that time, but had dropped her off earlier that evening. Tr. at 25–28.

Within days, the State charged Boyle with class A felony burglary, class A felony criminal deviate conduct, class A felony attempted rape, class B felony criminal confinement, and class C felony battery. At a January 23, 1995 change of plea hearing,[1] Boyle requested leave to plead guilty to the three class A felonies pursuant to a plea agreement. App. at 18, 99. According to the case chronology entry for that date, "[Boyle was] advised of rights and potential penalties. Factual basis submitted. [Boyle] agrees and Court finds that factual basis exists for plea. Court finds [Boyle] understands rights and knowingly and voluntarily waives rights. Plea accepted." *Id.* at 18–19. As per the plea agreement, the State dismissed the charges of class B felony criminal confinement and class C felony battery. *Id.* at 99. The plea agreement further provided: "the court is free to determine the sentence but the original executed sentence shall be no more than thirty-five (35) years." *Id.* at 100. The court entered judgment of conviction, ordered a presentence investigation report, and set the cause for sentencing. *Id.* at 18–19.

At the March 3, 1995 sentencing hearing, which was attended by Boyle and his counsel, the judge set out the sentence and rationale as follows:

That [Boyle] is 37 years of age and does have minimal prior exposure to the justice system in this state can be considered a mitigating circumstance. I don't know whether a substance abuse, including alcohol, problem—I don't know whether that's mitigating or not. But at least the prior record I will consider mitigating.

That—I don't find that at the time of the offense the return to [L.F.'s] residence—I just don't find that intoxication, regardless of body odor, because

---

1. The date of the plea and hearing actually may have been January 20, 1995. Whether it was January 23, 1995, or the earlier date is of no consequence to the resolution of the issues presented on appeal.

I don't think the two go together—because of the planning that was involved, which is aggravating. He knew where she lived, because he had dropped her off there. And when he showed up again, he had at least taken the trouble to learn where she lived.

I think we had an unscrewed light bulb outside. Got panty hose, mask on, changed shirt. [L.F.] knew what kind of a shirt the man who took her home had on, so this man has on a different shirt. All that shows planning.

Words not in the statute anymore for any crime, but we used to call that "premeditation." This wasn't a sudden thing. This was a planned thing, and obviously, that's—that is aggravating.

And, of course, we do have the tying of the hands. I can't remember. I thought I had notes on the hands being tied—concerning what was used to tie the hands. I'm basically going back to the suppression hearing, and I can't find it.

The use of the knife is sufficient to get to the—get to the A. And the injuries didn't have to follow. The beating, the concussion, the broken teeth didn't have to happen. And the fact that they did happen, that is aggravating.

I find, therefore, that the aggravating circumstances outweigh the mitigating circumstances.

The sentence as to each count is exactly the same, that is: 45 years on each count, 35 years executed, 10 suspended, 3 probation. Because of the minimum charges for the three Class A Felonies, can't be suspended below the minimum. The sentences have to run concurrently, as I—as I see it.

I'll recommend to the Indiana Department of Correction, [Boyle], that you receive substance abuse treatment and sex offender treatment. While you're on that three years' probation, must continue with any substance abuse treatment and sex offender treatment that is indicated. You must undergo random urinalysis.

Costs are $113 . . . . .

The anguish that you've created that night, [Boyle], is very disturbing to not only [L.F.], but it's disturbing to anybody that hears [L.F.] talk about it, which I've done now twice, today and, of course, on the 19th, when we did the suppression hearing. .

There's no excuse for the black eyes, the concussion, the bruises, the broken teeth. And the main aggravating circumstance, even more than that is, that the planning, the premeditation that went in.

Tr. at 60–62; App. at 20.

On August 13, 1997, Boyle filed a pro se petition for post-conviction relief. App. at 128–32. On December 10, 2003, Boyle filed an amended pro se petition for post-conviction relief. *Id.* at 26, 180–204. The following day, the court set a date for the "matter for PCR hearing." *Id.* at 26. On December 23, 2003, the State filed its response. *Id.* at 26, 205–06. On March 15, 2004, Boyle filed a petition requesting pauper counsel. *Id.* at 27. The next day, the court issued an order appointing the State Public Defender. *Id.* On March 31, 2004, the State Public Defender entered an appearance.

On June 24, 2004, the United States Supreme Court decided *Blakely*, which held that facts supporting an enhanced sentence must be admitted by the defendant or found by a jury. On November 9, 2004, our supreme court issued *Collins v. State*, 817 N.E.2d 230, 233 (Ind.2004), in which it held that the "proper procedure for an individual who has pled guilty in an open plea to challenge the sentence im-

posed is to file a direct appeal or, if the time for filing a direct appeal has run, to file an appeal under [Indiana Post–Conviction Rule 2, belated notice of appeal]." Our supreme court further instructed, "the post-conviction court should have dismissed the petition for post-conviction relief for lack of jurisdiction without prejudice to any right Collins may have to file a belated notice of appeal in accordance with the requirements of P–C.R. 2." *Id.*

On December 7, 2004, a deputy state public defender filed its "Motion to Withdraw [Boyle's] Petition for Post–Conviction Relief Without Prejudice and Petition to Pursue Belated Direct Appeal." App. at 227–28. In that motion, the deputy first stated, "[a]fter meeting with [Boyle], undersigned counsel understands that [Boyle] wishes to challenge his sentence," cited *Collins'* holding, and requested appointment of local counsel to "pursue permission to file a belated Notice of Appeal, … and if granted, a direct appeal." *Id.*[2] On December 9, 2004, the State filed its written objection to Boyle's motion in which it argued that Boyle had not claimed that he "was not advised of the right to appeal." *Id.* at 230–31.[3] Also on that date, a separate entry in the case chronology for December 9, 2004 states: "Court notes belated notice was denied." *Id.* at 30. The very next entry is for December 13, 2004, and states: "Court grants motion. Motion to withdraw petition for post conviction relief. Court orders petition dismissed without prejudice." *Id.* at 30.

On December 17, 2004, Boyle, through a deputy state public defender, filed a "Motion to Appoint Counsel at Local Expense to Represent [Boyle] in Belated Direct Appeal Proceedings." *Id.* at 31, 232. In that motion, he reiterated that he had filed the December 7 motion citing *Collins,* stated that the court had "granted the Motion"[4] on December 13, noted that belated direct appeals are outside of the scope of the state public defender's representation, and requested appointment of local counsel to seek a belated direct appeal. *Id.* at 232–33. In an order dated December 21, 2004, the court granted the "Motion to Appoint Counsel at Local Expense to Represent [Boyle] in Pursuing Belated Direct Appeal[.]" *Id.* at 31, 235; *see Kling v. State,* 837 N.E.2d 502, 508 (Ind.2005) (clarifying how representation is transferred "from the State Public Defender to a County Appellate Public Defender at the point when relief is granted under P–C.R. 2[.]").

On March 9, 2005, our supreme court issued *Smylie,* in which it held that the "sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." *Smylie,* 823 N.E.2d at 686. *Smylie* quoted the United States Supreme Court as follows: "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 687 (citing

---

**2.** A handwritten notation at the bottom of the December 7 motion states: "12/8/04 grant w/d of pcr. Deny belated direct appeal. [illegible initials?]." App. at 227.

**3.** Interestingly, the following handwritten note appears at the bottom of the State's objection: "12/8/04 belated notice was denied. [illegible initials?]." App. at 230. The handwriting seems to be the same as that

which appears on Boyle's December 7 motion.

**4.** Confusion exists in the record due to the two-part nature of the defense's December 7 motion. It appears that the court initially denied the motion to file a belated appeal, but then granted the motion to withdraw the post-conviction action without prejudice.

*Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). On June 6, 2005, Boyle filed his second Motion to File a Belated Notice of Appeal for the Record of Proceedings, this time contending that the Marion County Public Defender Agency had not been made aware of the appointment to represent Boyle on appeal until June 3, 2005. App. at 236–37. The court granted this motion on June 7, 2005. *Id.* at 32. Boyle filed his belated notice of appeal on June 28, 2005. *Id.* at 1.

### Discussion and Decision

#### I. Cross–Appeal

In its cross-appeal, the State asserts that the trial court abused its discretion when it granted Boyle's June 6, 2005 motion for permission to file a belated notice of appeal. In particular, the State maintains that Boyle did not allege, and the trial court did not make findings, that Boyle was (1) without fault in the delay, and (2) diligent in requesting permission to file a belated notice of appeal. If meritorious, the cross-appeal would require that we dismiss this appeal. The potential jurisdictional implications prompt us to address the State's cross-appeal first. *See Hull v. State,* 839 N.E.2d 1250, 1253 n. 1 (Ind.Ct.App.2005), *trans. not sought.*

Indiana Post–Conviction Rule 2, which permits a defendant to seek permission to file a belated notice of appeal, provides in part:

> Where an eligible defendant convicted after a trial or plea of guilty fails to file a timely notice of appeal, a petition for permission to file a belated notice of appeal for appeal of the conviction may be filed with the trial court, where:
>
> (a) the failure to file a timely notice of appeal was not due to the fault of the defendant; and

> (b) the defendant has been diligent in requesting permission to file a belated notice of appeal under this rule.
>
> The trial court shall consider the above factors in ruling on the petition. Any hearing on the granting of a petition for permission to file a belated notice of appeal shall be conducted according to Section 5, Rule P.C. 1.
>
> If the trial court finds grounds, it shall permit the defendant to file the belated notice of appeal, which notice of appeal shall be treated for all purposes as if filed within the prescribed period.
>
> If the trial court finds no grounds for permitting the filing of a belated notice of appeal, the defendant may appeal such denial by filing a notice of appeal within thirty (30) days of said denial.

Ind. Post–Conviction Rule 2(1). The rule does not explicitly require written findings.

 "Although there are no set standards defining delay and each case must be decided on its own facts, a defendant must be without fault in the delay of filing the notice of appeal." *Baysinger v. State,* 835 N.E.2d 223, 224 (Ind.Ct.App.2005). "Factors affecting this determination include the defendant's level of awareness of his procedural remedy, age, education, familiarity with the legal system, whether he was informed of his appellate rights, and whether he committed an act or omission that contributed to the delay." *Id.* Post–Conviction Rule 2 "does not require the court to conduct a hearing, but we have determined that one should be held where the petition raises a genuine factual dispute concerning the existence of grounds for relief." *Green v. State,* 593 N.E.2d 1237, 1238 (Ind.Ct.App.1992), *trans. denied.* Where the trial court does not hold a hearing before ruling on a petition to file a belated notice of appeal, we are "reviewing the same information that was available to the trial court[.]" *Baysinger,* 835

N.E.2d at 224. That being the case here, we review the grant of Boyle's motion de novo rather than deferring to the trial court's discretion. *See id.*

■ There can be little dispute that Boyle was in his mid-thirties when the crime was committed and that he has at least a high school diploma. His familiarity with the legal system is limited given his sparse prior criminal history.[5] Having scoured the appendix, plea agreement, and transcripts, we find no indication that Boyle was informed of his appellate rights. This brings us to the remaining two inquiries of whether Boyle committed an act or omission that contributed to the delay, and the extent to which he was aware of his procedural remedy. Analysis of these two questions leads us back to *Collins*.

■ We reiterate the *Collins* holding that the "proper procedure for an individual who has pled guilty in an *open* plea to challenge the sentence imposed is to file a *direct appeal or*, if the time for filing a direct appeal has run, to file *an appeal under [Indiana Post–Conviction Rule 2, belated notice of appeal]*." *Collins*, 817 N.E.2d at 233 (emphases added). That is, "a person who pleads guilty is entitled to contest on direct appeal the merits of a trial court's sentencing decision *where the trial court has exercised sentencing discretion*, i.e., where the sentence is not fixed by the plea agreement." *Id.* (emphasis added); *see Nguyen v. State*, 837 N.E.2d 153, 159 (Ind.Ct.App.2005) (defining open plea, range plea, and fixed plea).[6] Although Boyle did not agree to an open

plea, but to a range or capped sentence, we conclude, as the deputy state public defender and the trial court implicitly did, that *Collins'* teachings apply here. We reach this conclusion because a capped plea is more akin to an open plea in that judicial discretion is exercised in both instances. *See Childress v. State*, 848 N.E.2d 1073, 1078 (Ind., 2006) ("Although perhaps less apparent, even where a plea agreement sets forth a sentencing cap or a sentencing range, the court must still exercise some discretion in determining the sentence it will impose.").

To recap, on December 7, 2004, less than one month after *Collins* was issued, the deputy state public defender moved to withdraw Boyle's petition for post-conviction relief, and the court granted the motion and dismissed the petition without prejudice. On December 17, 2004, the deputy state public defender filed a motion to appoint local counsel to represent Boyle in seeking his belated direct appeal; in that motion, he reiterated that he had filed the December 7 motion citing *Collins*, alleged that the court had granted the motion on December 13, and noted that belated direct appeals are outside of the scope of the state public defender's representation. App. at 232–33. The court granted said motion on December 21, 2004. In Boyle's June 6, 2005 motion to file a belated notice of appeal for the record of proceedings, he contended that not until June 3, 2005 did the Marion County Public Defender Agency learn of the court's December 21, 2004 order granting Boyle's December 17, 2004 motion.

---

**5.** Until the present incident, Boyle's entire criminal history consisted of three alcohol-related offenses committed in the early 1980s, resulting in a total of five days executed. App. at 110.

**6.** "An 'open' plea is one in which the sentence to be imposed is left to the discretion of the court, bounded only by the statutory maxi-

mums and minimums. A 'range' plea establishes a range of possible sentences somewhat narrower than that allowed by statute; this would include a plea in which the sentence is capped. A 'fixed' plea specifies the exact number of years to be imposed." *Nguyen*, 837 N.E.2d at 158 n. 14.

While Boyle's June 6, 2005 motion to file belated notice of appeal for the record does not use the terms "diligence" or "without fault," there is no indication that Boyle caused the late notice of appeal. To the contrary, Boyle's motion explains that the Marion County Public Defender Agency did not become aware of its appointment to represent Boyle until June 2005—almost six months after the December 21, 2004 order. As for the delay between Boyle's sentencing and the belated appeal, we must keep in mind, "[p]rior to *Collins,* there was a split in authority over whether the proper procedure to challenge a sentence imposed upon an 'open plea' [let alone a capped plea] was by means of a direct appeal or by means of collateral review under P–C.R. 1." *Kling,* 837 N.E.2d at 505. As such, "some delay may be attributable to the prior uncertainty in the law rather than the defendant's lack of diligence." *Id.* at 509. We also point out how quickly after the issuance of *Collins* the deputy state public defender acted in Boyle's case. That is, the motion to withdraw Boyle's petition for post-conviction relief was filed less than one month after our supreme court handed down the *Collins* decision. Similarly, just four days after the court granted December 7 motion, the deputy state public defender filed a motion to appoint local counsel to represent Boyle in seeking his belated direct appeal. In summary, our independent review supports the trial court's decision to grant Boyle's motion to seek permission to file a belated notice of appeal.

## II. Boyle's Blakely Issue and Appropriateness Challenge

Boyle notes that in enhancing his sentences beyond the presumptive, the court utilized only two aggravating circumstances, which Boyle designates as: (1) planning/premeditation, and (2) degree of injuries. Boyle asserts that neither aggravator was admitted by him or tried to a jury. Citing *Blakely* and *Smylie,* Boyle asserts that this constituted a violation of his due process rights and resulted in an inappropriate sentence. He requests a remand for resentencing. The State responds with two waiver arguments, both of which we address before delving into Boyle's issue.

 The State contends that Boyle waived his claim that his sentence is inappropriate because his plea agreement provided him with a significant benefit; that is, it essentially precluded consecutive sentences and capped the executed portion of his sentence at thirty-five years. The State cites *Stites v. State,* 829 N.E.2d 527, 529 (Ind.2005), and *Gonzales v. State,* 831 N.E.2d 845, 846–47 (Ind.Ct.App.2005), *trans. denied,* in support of the proposition that where a defendant pleads guilty and receives a significant benefit from his plea to what otherwise would constitute an illegal sentence, he cannot subsequently complain of the sentence that he agreed to in his plea agreement.

In *Stites,* our supreme court emphasized that the defendant "specifically agreed to the consecutive sentence in her plea agreement with the State; this was not an 'open plea.'" 124 Ill.Dec. 842, 529 N.E.2d at 828. Here, Boyle did not agree to a fixed or specific sentence. He agreed to a range or capped sentence, which, again we view as more akin to an open plea since judicial discretion is exercised. *See Nguyen,* 837 N.E.2d at 159. Moreover, unlike the present appeal, *Stites* did not concern a *Blakely* challenge. Accordingly, we find *Stites* inapplicable. *Gonzales,* a post-conviction case involving a fixed plea and no *Blakely* challenge, is likewise inapposite. In short, we conclude that Boyle's case is distinguishable from the *Stites / Gonzales* line of cases.

■ In its second waiver argument, the State asserts that Boyle is precluded from alleging an inappropriate sentence where he pled guilty pursuant to a plea agreement containing a cap.[7] Our supreme court recently held otherwise. *See Childress,* slip. op. at 9 ("to say that a defendant has acquiesced in his or her sentence or has implicitly agreed that the sentence is appropriate undermines in our view the scope of authority set forth in Article VII, Section 4 of the Indiana Constitution[;]" and disapproving of *Mann v. State,* 742 N.E.2d 1025 (Ind.Ct.App.2001), *trans. denied, Gist v. State,* 804 N.E.2d 1204 (Ind.Ct.App.2004), and their progeny). Indeed there is nothing in Boyle's plea agreement indicating that he may have "consented" to either the appropriateness of the sentence or to the merits of the sentencing determination, that is, the weighing of aggravating and mitigating factors.

■ Before turning to Boyle's challenge to the aggravating factors, we make one last detour. Though the State does not raise the question of retroactive application of *Blakely,* we feel it would be remiss not to briefly mention it. Very recently, we extensively analyzed this issue in another belated appeal case and "conclude[ed] that *Blakely* applies retroactively because [the defendant's] case was not yet final when *Blakely* was decided." *Gutermuth v. State,* 848 N.E.2d 716, 728, (Ind. Ct.App., 2006). Similarly, we conclude that in Boyle's case, "the availability of appeal via Post–Conviction Rule 2(1) had not yet been exhausted when *Blakely* was

announced, and therefore *Blakely* must be given retroactive effect." *Id.* (citing *Griffith,* 479 U.S. at 328, 107 S.Ct. 708 *Sullivan v. State,* 836 N.E.2d 1031, 1035 (Ind. Ct.App.2005), and *Fosha v. State,* 747 N.E.2d 549, 552 (Ind.2001)). In reaching this conclusion, we echo the concerns outlined in *Gutermuth. See id.,* at 730 (noting that retroactive application of *Blakely* is likely to have a "highly detrimental effect on the administration of justice," and that it would wreak "havoc" on trial courts across the country.). We reaffirm: "Unless and until the U.S. Supreme Court revises or clarifies it s rules on retroactivity, however, we are bound to consider the merits of belated *Blakely* appeals where appropriate." *Id.; but see Robbins v. State,* 839 N.E.2d 1196 (Ind.Ct.App.2005), *trans. not sought,* and *Hull,* 839 N.E.2d 1250.

■ Finally, we address the merits of Boyle's *Blakely* claim.[8] An aggravating circumstance is proper for *Blakely* purposes when it is: (1) a fact of prior conviction; (2) found by a jury beyond a reasonable doubt; (3) admitted to by a defendant; or (4) stipulated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights. *Mask v. State,* 829 N.E.2d 932, 936–37 (Ind.2005).[9]

At the sentencing hearing, the judge in Boyle's case explained the two aggravating circumstances, planning/premeditation and degree of injuries, as follows:

---

7. The State's citation to *Higginbotham v. State,* 826 N.E.2d 5, 6 (Ind.Ct.App.2005), is unpersuasive given that the case involved a fixed plea.

8. Again, we note that the State did not directly respond to Boyle's challenge to the two aggravating factors.

9. Although often stated, it bears repeating that a potential *Blakely* problem only arises when aggravating circumstances are used to enhance a sentence *beyond the presumptive term. See Pinkston v. State,* 836 N.E.2d 453, 463 (Ind.Ct.App.2005), *trans. denied.* This is equally true in a capped plea case.

... because of the planning that was involved, which is aggravating. [Boyle] knew where she lived, because he had dropped her off there. And when he showed up again, he had at least taken the trouble to learn where she lived.

I think we had an unscrewed light bulb outside. Got panty hose, mask on, changed shirt. [L.F.] knew what kind of a shirt the man who took her home had on, so this man has on a different shirt. All that shows planning.

Words not in the statute anymore for any crime, but we used to call that "premeditation." This wasn't a sudden thing. This was a planned thing, and obviously, that's—that is aggravating.

And, of course, we do have the tying of the hands. I can't remember. I thought I had notes on the hands being tied—concerning what was used to tie the hands. I'm basically going back to the suppression hearing, and I can't find it.

The use of the knife is sufficient to get to the—get to the A. And the injuries didn't have to follow. The beating, the concussion, the broken teeth didn't have to happen. And the fact that they did happen, that is aggravating.

I find, therefore, that the aggravating circumstances outweigh the mitigating circumstances [limited prior criminal history].

. . . .

There's no excuse for the black eyes, the concussion, the bruises, the broken teeth. And the main aggravating circumstance, even more than that is, that the planning, the premeditation that went in.

Tr. at 60–62; App. at 20. Obviously, the two aggravating factors were neither prior convictions nor found by a jury beyond a reasonable doubt. Boyle asserts that these factors were not supported by either the factual basis or by his own statements, and therefore violate *Blakely*.

In reviewing the factual basis and Boyle's statements, we find that there was some support for the planning/premeditation aggravating factor. Specifically, the factual basis to which Boyle stipulated confirms that he "was wearing a stocking wrapped around his face and beard[,]" that he did bind L.F.'s "hands with a leather shoestring[,]" and that "having dropped her off earlier that evening[,]" he knew where she lived. Tr. at 25, 28. However, we find no mention of a "changed shirt" in the factual basis or in Boyle's statement. Moreover, while the factual basis notes that Boyle's fingerprints were found on a light bulb next to the lamp in L.F.'s bedroom, there is no mention of the bulb being "unscrewed." This "fact" may have originated from the affidavit for probable cause, which states, "the front porch light bulb had been unscrewed as to render it inoperable[.]" App. at 119. However, because Boyle did not admit to the contents of the probable cause affidavit, nor was it incorporated by reference in the factual basis, to use such information for sentencing purposes would be inconsistent with *Blakely*. Thus, this aggravating factor is somewhat problematic.

■ As for the degree of injuries aggravating factor, neither the factual basis nor Boyle's statements mention the "beating, the concussion, the broken teeth" or the "black eyes" as referenced in the sentencing statement. The only specific injuries noted in the factual basis are "various lacerations to [L.F.'s] fingers and palms of her hands"—which occurred when L.F. grabbed the knife blade. *Id.* at 26. Likewise, at the guilty plea hearing, Boyle agreed to having committed burglary resulting in "bodily injury" to L.F., as per the charging instrument. Tr. at 6. Howev-

er, the charging instrument, as read aloud by the court, contained no details regarding the injury/ies. The degree of injuries aggravating factor likely originated from the sentencing hearing, at which L.F. testified that Boyle "[b]roke five of my teeth off" and that he "beat me severely. I got two black eyes, a concussion, bruises all over my leg, my shoulder[.]" *Id.* at 50. However, because Boyle did not admit to or stipulate to these particular injuries, the aggravation of his sentences based upon the degree of injuries violates *Blakely.* *See Wright v. State,* 836 N.E.2d 283, 292 (Ind.Ct.App.2005) ("The testimony with respect to uncharged criminal conduct was not Wright's; instead, it was testimony [a witness] presented at the sentencing hearing. Wright's uncharged criminal conduct was therefore an improper aggravator."), *trans. denied.*

■ Accordingly, we are left with one impermissible aggravating factor, one aggravating factor that is partially problematic, and one valid mitigating factor. Given this scenario, we must conclude that Boyle's enhanced sentences ("45 years on each count, 35 years executed, 10 suspended, 3 probation" for each of the three class A felonies) were improper. *Id.* at 61; *see Sowders v. State,* 829 N.E.2d 18, 19 (Ind. 2005) (concluding that enhanced sentences were improper because they "were based on various aggravating factors that were neither prior convictions, nor reflected in the jury's verdict, nor admitted by Sowders. Also, Sowders did not stipulate to the relevant facts or consent to judicial factfinding when she pled guilty."). As such, we reverse and remand to the trial court for resentencing. *See Waldon v. State,* 829 N.E.2d 168, 184 (Ind.Ct.App. 2005) ("Because three potentially valid aggravators remain but we are unsure how the trial court weighed them at sentencing, and given that many of the reasons sup-

porting those aggravators are invalid, we remand to the trial court for resentencing."), *trans. denied; see also Smylie,* 823 N.E.2d at 691 (reversing part of sentence that enhances standard penalty and remanding for new sentencing hearing in which State may elect to prove adequate aggravating circumstances before a jury or accept statutory fixed term). In light of the reversal on the merits of the sentencing determination, we need not reach the Appellate Rule 7(B) appropriateness question.

Reversed and remanded.

MAY, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

The majority's decision to reverse is dependent in part upon its conclusion that *Blakely* applies retroactively to this case because Boyle's ability to appeal via Post–Conviction Rule 2(1) had not been exhausted. I continue to adhere to the contrary view, as articulated in *Robbins v. State,* 839 N.E.2d 1196 (Ind.Ct.App.2005). For the same reasons set out in my dissenting opinion in *Gutermuth v. State,* 848 N.E.2d 716 (Ind. Ct.App.2006), I respectfully dissent from the majority's holding in the instant case. I would affirm the trial court.