JANICE ARLENE BOLLMAN, Plaintiff-Appellee, v. DONALD PEHLMAN, Trustee of the Gordon Pehlman Testamentary Trust, and Indiv., Defendant-Appellant.

Fourth District   No. 4—04—0246

Argued August 24, 2004.—Opinion filed October 20, 2004.

Dwight H. O'Keefe III (argued), of Brown, Hay & Stephens, of Springfield, for appellant.

Thomas G. Hamill (argued), of Bellatti, Barton, Hamill & Cochran, L.L.C., of Springfield, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant, Donald Pehlman, appeals the Sangamon County circuit court's judgment requiring him to account to his sister, plaintiff Janice Arlene Bollman, for half of the assets of a trust he administered. We reverse.

The facts of this case are undisputed, and we take the following background information from the stipulation Donald and Janice filed with the circuit court. Gordon Pehlman, the parties' father, died on July 7, 1995. He and Donald had been co-owners (along with Janice's husband) of a business called the Pool Center, Inc. When Gordon died, the Pool Center owed him approximately $254,426.24.

Gordon's will established a trust for the care of his wife, Florence

Pehlman, who was also Janice and Donald's mother. Gordon left the majority of his estate to the trust, including the debt owed to him by the Pool Center. He named Donald as the trustee. On April 9, 1996, the Pool Center paid $255,404.50 to the trust in settlement of its debt to Gordon, and this money was deposited into the trust's Merrill Lynch investment account. The Pool Center was liquidated and ceased to exist by July 1, 1996.

Donald administered the trust uneventfully until Florence died on June 2, 2001. Gordon's will directed that on her death, the trust should terminate. Section III(2) of the will required the trustee to distribute the trust assets in relevant part as follows:

"(c) Third, give to my son, Donald Lee Pehlman, all shares of stock in the Pool Center, Inc., and any and all obligations owed to me by the Pool Center, Inc.; and

(d) Finally, *** divide the assets then in the *corpus* of the Trust into ten (10) [*sic*] equal shares to be distributed to each of my then living children, Donald Lee Pehlman and Janice Arlene Bollman."

The trust *corpus* at Florence's death consisted of the Merrill Lynch investment account containing approximately $245,156 in cash, government bonds, and securities. Donald, acting as trustee, made certain distributions that Janice does not dispute. He then distributed the remaining $235,843 in trust assets to himself, over Janice's objection.

Janice filed a motion to open Gordon's estate, which the circuit court denied as untimely. She then filed this action for an accounting. The circuit court ruled that the remaining assets should be distributed equally between Janice and Donald under clause III(2)(d) because the Pool Center stock and obligations referred to in the will's clause III(2)(c) no longer existed.

■ A court interpreting a trust must attempt to effectuate the settlor's intent, and the first guide to that intent is the plain and ordinary meaning of the words used in creating the trust. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172, 582 N.E.2d 120, 123 (1991). In addition to the trust's language, the court may consider the circumstances surrounding the trust's execution to determine the settlor's intent. *Department of Mental Health & Developmental Disabilities v. Phillips*, 114 Ill. 2d 85, 93, 500 N.E.2d 29, 33 (1986).

Gordon's will clearly stated that the trust terminated when Florence died and directed the trustee to distribute the Pool Center "stock" and "obligations" to Donald. Gordon apparently did not consider that the Pool Center might go out of business, and nothing in the will's language indicates whether he intended to leave to Donald the proceeds of the Pool Center assets if the company was dissolved.

The fact that Gordon and Donald were co-owners of the business at the time Gordon executed the will is likewise inconclusive. It may indicate that Gordon wanted Donald to have the ability to carry on the business unencumbered by debt, or it may be that Gordon wanted to leave the bulk of his assets (then represented by the business) to Donald.

■ Donald contends on appeal that the circuit court erroneously applied the doctrine of ademption. The rule has been described as "the extinction, alienation, withdrawal[,] or satisfaction of the legacy or devise by some act of the testator by which an intention to revoke is indicated." *Brady v. Paine*, 391 Ill. 596, 600-01, 63 N.E.2d 721, 723 (1945). In other words, when a testator bequeaths a specific item of property to someone but then disposes of the item before dying, the bequest is said to be "adeemed," and the devisee cannot inherit either that item or its value. The rule typically operates on direct bequests from an estate and has never been applied in Illinois to a final distribution from a testamentary trust. The circuit court implicitly extended the ademption rule to this context by ruling as it did. We conclude that this extension of the ademption rule to a testamentary trust was improper.

Courts have traditionally offered one of two rationales for the ademption rule. The first, called the "identity theory," is concerned solely with whether the property at issue is present in the estate at the testator's death. *In re Estate of Kolbinger*, 175 Ill. App. 3d 315, 324, 529 N.E.2d 823, 829 (1988). Under this view, the reasons for the presence or absence of the property are irrelevant. But the theory of the Illinois courts has been that a bequest is adeemed because the testator acted in a way indicating her intent to revoke the bequest. *Kolbinger*, 175 Ill. App. 3d at 324, 529 N.E.2d at 829. When the specifically devised property is absent from the estate, Illinois courts have been willing to inquire into why, in search of evidence of the testator's intent.

The *Kolbinger* case illustrates how the intent theory of ademption operates where the specific property is destroyed involuntarily. In *Kolbinger*, the testator left real property to two of her children. After she became incapacitated to the point where she could not manage her own affairs, a fire destroyed the improvements on the property and the insurance proceeds were placed in a certificate of deposit. The court held that the devise of real property with improvements was not adeemed. This was not a case where the testator chose to sell the real estate after executing the will. The testator lacked capacity to change her will; thus, the fact that she did not do so after the fire did not indicate an intention to revoke the bequest of the improved property.

The sons thus inherited the insurance proceeds. *Kolbinger*, 175 Ill. App. 3d at 325-26, 529 N.E.2d at 829-30.

Where the devised property is conveyed away by someone other than the testator, no ademption occurs under the intent theory. In *Hobin v. O'Donnell*, 115 Ill. App. 3d 940, 451 N.E.2d 30 (1983), the plaintiff's aunt made him a specific bequest of stock in her will, but when she died the stock was no longer part of her estate. She had been incapacitated toward the end of her life, and the plaintiff alleged that someone other than his aunt had sold the stock without her knowledge. The appellate court held that if someone other than the testator had sold the stock, then there could be no ademption of the bequest because the testator had not demonstrated her intent to revoke the gift to the plaintiff. *Hobin*, 115 Ill. App. 3d at 943, 451 N.E.2d at 32; see also *Lewis v. Hill*, 387 Ill. 542, 548, 56 N.E.2d 619, 623 (1944) (conveyance by incompetent testator's conservator does not adeem a specific devise).

If a testator's intentional act is required to revoke a specific bequest by ademption, we see no reason there should be a different rule when the property first passes to a testamentary trust. Where the testator has provided for a specific bequest on termination of the trust, and the trust no longer possesses the property because of the trustee's actions, it cannot be because the testator intended to revoke the bequest. In such a case, there can be no ademption. See *In re Will of Weiler*, 149 Misc. 2d 371, ___, 565 N.Y.S.2d 410, 412 (Sur. Ct. 1990) (reaching the same result).

■ In this case, Gordon left to Donald his stock in the Pool Center and the debts the corporation owed him. Donald's actions as trustee cannot cause an ademption of Gordon's bequest, so under the trust's provisions Donald should receive those assets. The stock and debt have been converted in form into the holdings in the trust's Merill Lynch account, and Donald must therefore receive the residue of this account. See *Kolbinger*, 175 Ill. App. 3d at 325-26, 529 N.E.2d at 829-30 (awarding insurance proceeds to specific devisee sons). Donald acted properly when, acting as trustee, he made a final distribution of $235,843 to himself as an individual.

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

KNECHT, P.J., and APPLETON, J., concur.