2020 IL App (1st) 191769-U

No. 1-19-1769

Fourth Division
March 31, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| CHICAGO TRUST COMPANY, as Trustee of the Brierton Family Trust, | ) ) ) ) | |
| Plaintiff and Counterdefendant-Appellee, | ) ) | |
| v. | ) ) | |
| ROBIN ANN BRIERTON, PATRICK LUKE BRIERTON, MARK JOSEPH BRIERTON, CYNTHIA BRIERTON DeLONG, JOHN THOMAS BRIERTON, and THOMAS BRIERTON, as Beneficiaries of the Brierton Family Trust, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. No. 18 CH 07512 |
| Defendants | ) ) ) | The Honorable Raymond W. Mitchell, Judge Presiding. |
| (John Thomas Brierton and Thomas David Brierton, as Beneficiaries of the Brierton Family Trust, Defendants and Counterplaintiffs-Appellants | ) ) ) ) ) | |
| Patrick Luke Brierton, Mark Joseph Brierton, and Cynthia Brierton DeLong, as Beneficiaries of the Brierton Family Trust, Defendants-Appellees). | ) ) ) ) ) ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The trial court's grant of summary judgment is affirmed where (1) the terms of a trust agreement governed the distribution of membership interests in a limited liability company in which the trust was the sole member; (2) the trustee of the trust had the authority to issue membership interests to the trust beneficiaries even while the limited liability company was in the process of winding up its affairs and could distribute the company's assets pursuant to the distribution schedule set forth in the trust agreement; and (3) the defendants have no breach of contract claim.

¶ 2       The instant appeal arises from a declaratory judgment lawsuit concerning the interplay between two documents: a limited liability company's operating agreement and a trust agreement. Plaintiff Chicago Trust Company serves as the trustee of the Brierton Family Trust (trust), under which Robin Ann Brierton, Patrick Luke Brierton, Mark Joseph Brierton, Cynthia Brierton DeLong, John Thomas Brierton, and Thomas David Brierton are all named as beneficiaries. The trust also serves as the sole member and owner of Picture Ranch, LLC (LLC), a limited liability company formed by the beneficiaries' parents. The trust provided that, upon the death of the parents, their children as listed above become the sole beneficiaries of the trust. After the death of the parents, the trust sold the sole non-cash asset of the LLC. Two of the children beneficiaries, defendants John and Thomas,[1] who also filed a counterclaim against plaintiff, alleged that the LLC's operating agreement requires the distribution of the LLC's membership interests and, consequently, the proceeds from the sale, to all six defendants *per stirpes*, a provision that is in conflict with a different distribution of interests set forth in the trust agreement. Both plaintiff and defendants filed motions for summary judgment, and the trial court found that the division of membership interests set forth

_____

[1] All six beneficiaries were named as defendants in the instant action. However, only John and Thomas took a position that was adverse to plaintiff's position, so we refer to them as the defendants, while we refer to the beneficiaries collectively as either the beneficiaries or the children; to the extent that we refer to any of the beneficiaries individually, we use their first names, as most of them share a surname. According to the record, Robin passed away in January 2019. Mark, Patrick, and Cynthia filed appearances in the instant appeal as appellees and have adopted plaintiff's brief.

in the trust agreement controlled the distribution of the LLC's assets. Defendants appeal and, for the reasons that follow, we affirm.

¶ 3                                               BACKGROUND

¶ 4        On June 15, 2018, plaintiff filed a complaint for declaratory judgment against all six children, seeking a declaration of the terms of the trust, which was created by the deceased parents, John Brierton, Sr. (John Sr.), and Jeanne Brierton, in 1996. The complaint alleged that John Sr., who passed away in March 2016, and Jeanne, who passed away in March 2017, were the original settlors and the children were the beneficiaries under the trust. The trust also owned 100% of the membership interest in the LLC, which owned a manufactured home community in Colorado. Under the trust agreement, plaintiff as trustee was directed to distribute the trust's membership interest in the LLC to the six beneficiaries in individually-identified percentages under the terms of the trust.

¶ 5        The complaint alleged that on April 11, 2018,[2] the LLC closed on the sale of its sole asset, a manufactured home community in Colorado, and that the net proceeds from the sale were being held by plaintiff in a segregated account. The complaint alleged that prior to the closing, the property was encumbered by a mortgage, which prohibited any change in ownership of the LLC. However, the mortgage was paid off and released, leaving the trust "ready, willing, and able to distribute the Membership Interests in kind, pursuant to the unambiguous instructions of the Trust Amendment."

¶ 6        The complaint alleged that defendants took the position that the trust was prohibited from transferring the membership interests because the LLC sold its sole non-cash asset and was in

_____

[2] Defendants' countercomplaint alleged that the closing occurred on April 12, 2018. Whether the closing occurred on April 11 or April 12 has no bearing on the issues raised on appeal.

the process of liquidation in winding up its affairs. Instead, defendants claimed that the membership interests must be retained by the trust and the sale proceeds must be distributed pursuant to the residuary clause of the trust, which provided for an equal distribution to all six beneficiaries. Consequently, plaintiff sought a declaration from the court with respect to the proper distribution of the membership interests to the beneficiaries.

¶ 7        Attached to the complaint was a copy of the original trust agreement and an amendment to the trust. The original trust agreement was dated March 21, 1996, and provided that it was to be interpreted according to Illinois law. The trust agreement named John Sr. and Jeanne as trustees and as lifetime beneficiaries, and provided that, upon the death of both John Sr. and Jeanne, any trust assets were to be distributed according to a schedule of contingent beneficiaries set forth in the trust agreement. Section V of the trust agreement concerned successor trustees, and paragraph (1)(a) provided, upon assuming the administration of the trust after the surviving spouse's death, as follows:

> "The Successor Trustee shall forthwith, transfer all right, title and interest in and to the Trust Property unto the contingent beneficiaries, *** as specified by the attached Schedule of Contingent Beneficiaries."

Paragraph (1)(d) provided:

> "On the death of the Surviving Trustor, Successor Trustee shall divide the Trust estate, including undistributed income and any subsequent additions, into such proportion as indicated for such contingent beneficiaries as specified, in the Declaration of Trust, *** as specified by the attached Schedule of Contingent Beneficiaries."

¶ 8        The first amendment to the trust agreement, dated August 29, 2009, provided the following schedule of contingent beneficiaries, which appears to have been the same schedule of contingent beneficiaries in force at the time of the instant litigation:

"I. Member interests in PICTURE RANCH LLC to our then living children as follows:

Robin Ann Brierton        Forty Percent (40%)

Patrick Luke Brierton      Twenty Percent (20%)

John Thomas Brierton     Ten Percent (10%)

Mark Joseph Brierton     Ten Percent (10%)

Cynthia Jean DeLong      Ten [P]ercent (10%)

Thomas David Brierton    Ten Percent (10%)

II. The residue of the trust estate to our then living children in equal shares."

¶ 9        Also attached to the complaint was a copy of the LLC's operating agreement, which was dated January 19, 2006, and listed as members John Sr. and Jeanne, as well as two amendments to the operating agreement. The operating agreement provided that "[t]he Company's business and purpose shall consist solely of the acquisition, ownership, operation and management of the real estate project known as Picture Ranch Mobile Home Park, located in Clifton, Colorado (the 'Property') and such activities as are necessary, incidental, or appropriate in connection therewith." The operating agreement further provided that it was to be interpreted under Colorado law.

¶ 10       Section 10.4 of the operating agreement concerned transfers by members. Section 10.4(c), the provision at issue in the instant litigation provided:

5

"(c) *Transferees*. Notwithstanding anything in this Agreement to the contrary, the Members agree to execute a new will and/or revocable living trust in order to provide that upon the death of either of the Members, the deceased Member's membership interests shall be distributed to the surviving Member. Upon the death of the surviving Member, the surviving Member's entire membership interests will be allocated per stirpes among the then-living descendants of the marriage of John and Jeanne Brierton."

¶ 11 Article 5 of the operating agreement concerned termination of the LLC and provided in section 5.1 that the LLC would continue in perpetuity, unless terminated in accordance with section 5.2. Section 5.2 provided, in relevant part:

"*Termination*. The Company shall terminate prior to the term set forth in Section 5.1:

(a) *Sale of Assets*. Upon the sale or other disposition of all or substantially all of the Company's non-cash assets; provided, however, that this Agreement generally and Article 12 in particular shall govern the conduct of the parties during the winding up of the Company; ***."

¶ 12 As referenced in article 5, article 12 of the operating agreement concerned the winding-up process. Section 12.1 provided:

"*Liquidation Procedures*. Upon termination of the Company pursuant to Article 5, the affairs of the Company shall be wound up and the Company shall be dissolved. As part of the winding up of the Company, a proper accounting shall be made of the net profit or net loss of the Company from the date of the last previous accounting to the date of termination."

Section 12.3 provided that the proceeds of the liquidation would be distributed first to creditors, then among the members.

¶ 13    Article 16 contained miscellaneous provisions, including section 16.8, which provided:

"*No Third Party Beneficiaries*. Without limiting any of the provisions of this Agreement, including any obligations of Members to make capital contributions or to return money or other property to the Company, the provisions of this Agreement are intended solely to benefit the Company and the parties hereto and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third party beneficiary of this Agreement), and the Members shall have no duty or obligation to any creditor of the Company to make any contributions or return any money or other property to the Company."

¶ 14    The operating agreement was signed by John Sr. and Jeanne, each of whom had a 50% interest in the LLC and each of whom made a $100 capital contribution to the LLC. Under an August 29, 2009, assignment also attached to the complaint, both John Sr. and Jeanne assigned all right, title, and interest in the LLC to the trust. The first amendment to the operating agreement, dated August 29, 2009, provided that in the event that neither John Sr. nor Jeanne were able to act as manager, Robin would become the sole manager of the LLC. The second amendment, dated September 4, 2009, replaced Robin with Patrick as the manager of the LLC in the event that neither John Sr. nor Jeanne could do so.

¶ 15    On July 18, 2018, defendants filed an answer and countercomplaint, in which they alleged that section 10.4(c) of the LLC's operating agreement required a *per stirpes* division of the LLC's membership interests. Defendants further claimed that the trust agreement's division of

membership interests in its schedule of contingent beneficiaries impermissibly contradicted the terms of the operating agreement.

¶ 16    Defendants alleged that John Sr. died on March 4, 2016, making Jeanne the sole trustee of the trust. Sometime prior to her death on March 29, 2017, plaintiff was named as successor trustee of the trust[3] and since Jeanne's death, plaintiff had acted as trustee. Additionally, plaintiff "has also purported to act as the sole Member of the [LLC], and is the current owner of 100% of the membership interests in the [LLC]." Defendants further alleged that plaintiff "has continually taken the position since Jeanne's death, and up until at least May 21, 2018, that none of the Brierton children, including [defendants], are or ever have been Members of the Company."

¶ 17    Defendants alleged that plaintiffs sold the sole asset of the LLC, a manufactured home community in Colorado, on April 12, 2018. Accordingly, as of April 12, 2018, the LLC had no non-cash assets. Defendants alleged that article 5 of the operating agreement provided that the LLC would terminate upon the sale of the LLC's non-cash assets. Consequently, according to defendants, the LLC was " 'terminated' " as of April 12, 2018, and plaintiff was required to distribute the LLC's assets pursuant to the operating agreement. Defendants claimed that the LLC's assets must be distributed under section 10.4(c) of the operating agreement and not pursuant to any other provision of the trust agreement.

¶ 18    Defendants alleged that, while plaintiff had indicated its intent to assign the beneficiaries membership interests in the LLC, it could not do so because the LLC was in the winding-up

_____

[3] According to the record, plaintiff succeeded Jeanne as trustee on June 10, 2016, due to Jeanne's incapacity.

process. Consequently, all of the LLC's assets must pass to the trust, where defendants claimed that they were entitled to a *per stirpes* distribution of the LLC's assets.

¶ 19    Count I of the countercomplaint was for declaratory relief and sought a declaration concerning the distribution of the LLC's assets. Count II was for breach of contract, and alleged that John Sr. and Jeanne, and the trust as their successor, breached the terms of the operating agreement by failing to make provisions to bequeath their membership interests in the LLC to their surviving children *per stirpes*, as required under section 10.4(c). Defendants alleged that, had they done so, each defendant would receive a 16.67% share of the membership interests, and 16.67% of the assets, as opposed to the 10% set forth in the trust agreement. Defendants claimed that they had standing to sue upon and enforce the operating agreement "[a]s intended third-party donee beneficiaries of the Operating Agreement."

¶ 20    Attached to the countercomplaint was a copy of the LLC's operating agreement, as well as several amendments to the operating agreement, including some that had not been attached to plaintiff's complaint. The third amendment to the operating agreement, dated February 5, 2015, provided that the managers of the LLC were Mark, Cindy, and Patrick, while the trust, with John Sr. and Jeanne as trustees, was listed as the sole member. The fourth amendment, dated May 31, 2017, listed the trust as the sole member, with plaintiff as the trustee of the trust; Mark, Cindy, and Patrick continued to be listed as the managers of the LLC. The fourth amendment also indicated that the LLC had executed a loan and mortgage on the property.

¶ 21    Finally, attached to the countercomplaint were the second and third amendments to the trust agreement; the original trust agreement and the first amendment were not attached to the countercomplaint but had previously been attached to plaintiff's complaint. The third amendment was dated December 1, 2015, and amended the trust agreement to provide that

9

Jeanne was the current trustee and that the successor trustee would be plaintiff. Neither the second amendment nor the third amendment addressed the beneficiaries' interests in the LLC.

¶ 22    On March 11, 2019, defendants filed a motion for summary judgment on both plaintiff's complaint and on their countercomplaint, claiming that there were no facts in dispute and that they were entitled to judgment as a matter of law. Defendants claimed that, since the LLC terminated on April 12, 2018, when the non-cash assets were sold, the LLC could no longer issue membership interests, meaning that the trust owned 100% of the membership interests, which were required to pass according to the residuary clause set forth in section 10.4(c) of the operating agreement. Defendants claimed that Colorado law prohibited the admission of new members when an LLC was in the process of winding up its business, meaning that plaintiff could not issue any membership interests to the beneficiaries. Defendants argued that plaintiff should have distributed the membership interests to the beneficiaries immediately upon Jeanne's death but that, since it chose instead to sell the sole non-cash asset, plaintiff could no longer do so. Defendants also argued that, to the extent that the schedule of contingent beneficiaries in the trust agreement conflicted with the provisions of paragraph 10.4(c) of the operating agreement, the operating agreement should control. Finally, defendants claimed that even if the trust agreement was found to control, plaintiff was liable for breach of contract because the operating agreement provided defendants with a vested right in 16.67% of the distributable proceeds from the LLC, not the 10% provided in the trust agreement. Defendants further claimed that they had standing as third-party donee beneficiaries to seek to enforce the terms of the operating agreement.

¶ 23    On April 19, 2019, plaintiff filed a combined response to defendants' motion for summary judgment and a request for declaratory judgment on its complaint. As defendants had done,

plaintiff claimed that there were no disputed issues of fact and that it was entitled to judgment as a matter of law. Plaintiff claimed that the assignment of John Sr.'s and Jeanne's membership interests in the LLC to the trust "had the effect of amending Section 10.4(c) of the Operating Agreement, because as the sole member of the LLC, the Trust cannot die, has not been terminated, and has its own beneficiaries. Therefore, as of August 29, 2009, Section 10.4(c) of the Operating Agreement is moot." Plaintiff also claimed that the contingent beneficiaries' membership interests in the LLC vested immediately upon Jeanne's death, as set forth in section V, paragraph (1)(a)(4) of the trust agreement. Accordingly, it argued that any distribution of LLC interests or proceeds must occur according to the vested interests set forth in the trust agreement. Plaintiff also argued that the membership interests were specific bequests that should be distributed according to the trust agreement and not treated as " 'residue.' " Finally, plaintiff claimed that even if it was considered to be adding " 'new' " members to the LLC, Colorado law did not prohibit such an action because plaintiff was not changing the nature of ownership but merely distributing the vested equitable interests to the trust beneficiaries. Plaintiff also argued that defendants' breach of contract claim must fail, because the operating agreement specifically stated that there were no third-party beneficiaries.

¶ 24        On May 3, 2019, Patrick, Mark, and Cynthia filed a combined "motion in support of" plaintiff's request for declaratory judgment and motion for summary judgment on plaintiff's complaint. They claimed that the beneficiaries' membership interests in the LLC were vested as of the date of Jeanne's death and that the interests were " 'held' in trust until the specific time designated in the Trust Agreement" such that no new membership interests were being created by plaintiff's actions.

¶ 25        In their reply in support of their motion for summary judgment, defendants claimed that plaintiff was contending for the first time that the beneficiaries' interests in the LLC had vested at the time of Jeanne's death. However, defendants argued that this claim was belied by plaintiff's conduct and its admissions that it was the sole member of the LLC. Defendants further argued that, by its conduct, plaintiff had caused the specific bequests of membership interests in the LLC to abate, requiring distribution of the LLC's assets pursuant to section 10.4(c) of the operating agreement.

¶ 26        On July 30, 2019, the trial court entered an order on the parties' motions. The court found that, upon Jeanne's death, instead of dividing the membership interests in the LLC, plaintiff sold the sole non-cash asset of the LLC, effectively terminating it. The court found that the proceeds from the sale represented the converted value of the LLC membership interests and therefore must be distributed according to the percentages delineated in the trust agreement. The court found unpersuasive defendants' arguments that the LLC could not transfer membership interests during the winding-up period, noting that "since the membership interests represent a specific bequest effectively sold by the trustee, the proceeds may be transferred pursuant to the trust instrument." The court found that Colorado law did not preclude the transfer, because "[t]he trustee here seeks to allocate the membership interests specifically to distribute the proceeds of the sale of Picture Ranch," which was permitted under Colorado law. The court also found unpersuasive defendants' argument that section 10.4(c) of the operating agreement controlled over the trust agreement, noting that section 10.4(c) directed the establishment of a trust, "demonstrat[ing] the intent that the trust—rather than [the] operating agreement—effectuates the transfer of membership." Finally, the court found unpersuasive defendants' breach of contract claim, finding that section 10.4(c) demonstrated

that John Sr. and Jeanne intended to pass their membership interests pursuant to the trust and further finding that the assignment of their membership interests to the trust "obviated the operation of section 10.4(c) in favor of the controlling trust instrument." Accordingly, the trial court denied defendants' motion for summary judgment and granted plaintiff's motion for judgment on its complaint, ordering plaintiff to distribute the proceeds from the sale of the LLC's assets pursuant to the schedule of contingent beneficiaries set forth in the first amendment to the trust agreement.

¶ 27     This appeal follows.

¶ 28                                                ANALYSIS

¶ 29     On appeal, defendants first argue that the distribution of membership interests in the operating agreement controls over the distribution set forth in the trust agreement. If the trust agreement is determined to control, defendants then argue that plaintiff had no authority to issue new membership interests during the winding-up process and also argue that plaintiff is liable for breach of contract for violating the terms of the operating agreement with respect to the size of defendants' membership interests.

¶ 30     The litigation below was resolved through summary judgment. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo*

consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 31        "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 32        In the case at bar, defendants first argue that the distribution of membership interests set forth in the operating agreement controls over the distribution set forth in the trust agreement. As noted, the operating agreement provides that it is to be interpreted according to Colorado law, while the trust agreement provides that it is to be interpreted according to Illinois law. Accordingly, we consider the applicable state's law when interpreting each document. We begin with the terms of the operating agreement.

14

¶ 33    Defendants claim that the terms of the operating agreement must be given "maximum effect" under the Colorado Limited Liability Company Act (Colorado Act) (Colo. Rev. Stat. § 7-80-101 *et seq.* (West 2018)). Section 7-80-108 of the Colorado Act sets forth the effect of operating agreements, providing in section 7-80-108(4) that "[i]t is the intent of this article to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." Colo. Rev. Stat. § 7-80-108(4) (West 2018). Defendants claim that this language means that an operating agreement controls over a conflicting term in another document.

¶ 34    In support of this argument, defendants rely on the supreme court of Colorado's decision in *Condo v. Conners*, 266 P.3d 1110 (2011). In that case, the Colorado court was asked to consider the effect of an assignment made by one member in the face of an anti-assignment clause contained in the operating agreement. *Condo*, 266 P. 3d to 1111. The court first noted that, under Colorado law, an operating agreement was to be interpreted according to general contract principles. *Condo*, 266 P.3d at 1115. The court then noted that, where they did not conflict with existing law, section 7-80-108(4) of the Colorado Act mandated that the court give maximum effect to the principle of freedom of contract and to the enforceability of the terms of the operating agreement. *Condo*, 266 P.3d at 1115. The court found that the express terms of the operating agreement prohibited assignments without the consent of the other members, meaning that the assignment at issue violated the terms of the operating agreement. *Condo*, 266 P.3d at 1115-16. The court also found that the language of the anti-assignment clause rendered the assignment at issue void and of no legal effect. *Condo*, 266 P.3d at 1119.

¶ 35    Defendants claim that *Condo* is applicable to the case at bar, because section 10.4(c) of the operating agreement "is effectively an anti-assignment clause that obligated both John Senior

and Jeanne to provide in an estate plan that the first to die of the two of them would leave their membership interest to the other, and then upon the death of the second one, all the membership interests would go to their descendants, *per stirpes*." We do not find this argument persuasive.

¶ 36    First, section 10.4(c) is not an anti-assignment clause. Instead, it directs the members to "execute a new will and/or revocable living trust" containing certain terms for the disposition of the members' membership interests upon their death. Nothing in section 10.4(c) restricts the assignment of the members' membership interests. Indeed, other provisions in article 10 of the operating agreement expressly provide for the ability to assign a member's interest with the consent of the manager. Accordingly, we find *Condo* wholly inapplicable to the instant case.

¶ 37    Second, defendants' argument overlooks the fact that, at the time of their deaths, neither John Sr. nor Jeanne remained members of the LLC—both of them assigned all right, title, and interest in the LLC to the trust on August 29, 2009. Thus, even if they had "execute[d] a new will and/or revocable living trust" under the direction of section 10.4(c), they would not have had any membership interests to distribute, whether *per stirpes* or not. Defendants' argument conflates the direction that John Sr. and Jeanne left in their trust as settlors with their rights and duties as members of the LLC. But the fact is that John Sr. and Jeanne were not members of the LLC and did not have any membership interests to distribute in their capacity as individuals. The only member as of August 29, 2009, was the trust. While defendants are correct that section 10.4(c) was never formally removed, we agree with plaintiff and the trial court that the provision simply is not applicable when applied to a trust—a trust cannot execute a will and cannot "die," meaning that the section is effectively inoperative while the trust holds all membership interest. Consequently, we cannot find that the trial court erred in determining that section 10.4(c) did not control the distribution of the LLC's assets.

¶ 38     Next, defendants claim that plaintiff does not have the power to issue new membership interests to the beneficiaries while the LLC is in the wind-up process. Under the Colorado Act, a dissolved limited liability company "continues its existence as a limited liability company but shall not carry on any business except as is appropriate to wind up and liquidate its business and affairs," including collecting its assets, disposing of its properties that will not be distributed in kind to its members, discharging or making provision for discharging its liabilities, distributing its remaining property among its members, and "[d]oing every other act necessary to wind up and liquidate its business and affairs." Colo. Rev. Stat. § 7-80-803 (West 2018).

¶ 39     Defendants rely on the federal district court case of *Schneider v. Cate*, 405 F. Supp. 2d 1254 (D. Colo. 2005), to argue that the issuance of membership interests by the trust as sole member of the LLC is impermissible during the winding-up process. In that case, as part of a series of financial transactions between a decedent and her spouse, the two jointly owned a limited liability company; when the company was administratively dissolved in 2002, the company's sole asset was owned jointly by the decedent's trust and the spouse's trust. *Schneider*, 405 F. Supp. 2d at 1257. Later, the two trusts attempted to change the ownership structure of the dissolved limited liability company to provide for joint tenancy with right of survivorship instead of tenancy in common. *Schneider*, 405 F. Supp. 2d at 1257. In dismissing the case for lack of jurisdiction, the district court commented on the claims concerning the limited liability company, noting that the company had been dissolved for almost two years before the trusts sought to change the ownership structure and that "an intent to alter the legal status of the ownership of the LLC itself [is] an action beyond the power of a dissolved LLC." *Schneider*, 405 F. Supp. 2d at 1268.

17

¶ 40    Plaintiff, on the other hand, argues that it is not attempting to change the ownership structure of the LLC but is merely distributing already-vested interests to the appropriate parties. In a conventional trust, as in the case at bar, the trustee holds the legal title to the trust's property, while the beneficiary holds the equitable title. *Culicchia v. Hupfauer*, 379 Ill. App. 3d 562, 565 (2008); *In re Estate of Mendelson*, 298 Ill. App. 3d 1, 3 (1998). Section V, paragraph (1)(d) of the trust agreement provides that, "[o]n the death of the Surviving Trustor," the successor trustee "shall divide the Trust estate, including undistributed income and any subsequent addition, into such proportion as indicated for such contingent beneficiaries" as specified in the trust agreement. Thus, upon Jeanne's death, the beneficiaries' interests in the trust assets vested and the beneficiaries held the equitable title to the assets. One such trust asset was the 100% membership interest in the LLC, which was directed to be distributed according to the schedule of contingent beneficiaries. Plaintiff thus claims that all it is attempting to do is to effectuate the terms of the trust agreement, not alter the ownership structure of the LLC.

¶ 41    In the case at bar, we cannot agree with defendants that plaintiff is attempting to take action that is impermissible during the winding-up period. First, even if we found *Schneider*, a federal district court case with no precedential value in our court, persuasive, it is entirely inapplicable to the present situation. *Schneider* involved the attempt to change the ownership structure of a limited liability company that had long been dissolved. By contrast, the instant case involves a limited liability company that is in the process of actively winding up its affairs, under which it is entitled to take certain actions. More importantly, we cannot agree with defendants that plaintiff's actions are impermissibly changing the ownership structure of the LLC. While the trust continued to hold legal title to the membership interests, upon Jeanne's death in 2017,

each beneficiary held equitable title to a certain percentage of those membership interests. Thus, the beneficiaries held equitable title to the membership interests prior to the sale of the LLC's non-cash assets, the event that triggered the termination of the LLC. Plaintiff's actions in now attempting to fully transfer the membership interests to the beneficiaries consequently does not run afoul of the permitted conduct of a limited liability company that is in the process of winding up its affairs and we cannot find that the trial court erred in determining that plaintiff may take such action.

¶ 42    We also cannot find that the trial court erred in finding that plaintiff could distribute the proceeds from the sale of the LLC's sole non-cash asset according to the schedule of contingent beneficiaries in the trust agreement. Plaintiff claims, and the trial court agreed, that the case of *Bollman v. Pehlman*, 352 Ill. App. 3d 1203 (2004), is most analogous to the case at bar. In that case, a father and son were co-owners of a corporation and, at the time the father died, the corporation owed him approximately $250,000. *Bollman*, 352 Ill. App. 3d at 1204. The father's will established a trust, for which the son was named as trustee, and the father left the bulk of his estate to the trust, including the debt owed him by the corporation. *Bollman*, 352 Ill. App. 3d at 1204-05. The corporation paid off the debt to the trust, and the money was deposited into the trust's bank account. *Bollman*, 352 Ill. App. 3d at 1205. The corporation then dissolved. *Bollman*, 352 Ill. App. 3d at 1205. After the death of the father's spouse, the trust terminated and the son as trustee was directed to distribute the assets; the son was to receive all shares of stock in the corporation and any debt owed by the corporation and the remainder of the trust assets were to be distributed equally between the son and his sister. *Bollman*, 352 Ill. App. 3d at 1205.

¶ 43    On appeal, the appellate court was asked to consider the effect of the bequest of stock and debt, given that the corporation was dissolved. *Bollman*, 352 Ill. App 3d at 1205-06. The trial court below had applied the doctrine of ademption, which the appellate court described as: "when a testator bequeaths a specific item of property to someone but then disposes of the item before dying, the bequest is said to be 'adeemed,' and the devisee cannot inherit either that item or its value." *Bollman*, 352 Ill. App. 3d at 1206. However, the appellate court noted that this rule had never been applied to a final distribution from a testamentary trust and found that the trial court improperly extended the rule. *Bollman*, 352 Ill. App. 3d at 1206. The court noted that "the theory of Illinois courts has been that a bequest is adeemed because the testator acted in a way indicating her intent to revoke the bequest." *Bollman*, 352 Ill. App. 3d at 1206. Thus, "[w]hen the specifically devised property is absent from the estate, Illinois courts have been willing to inquire into why, in search of evidence of the testator's intent." *Bollman*, 352 Ill. App. 3d at 1206. The court further noted that "[w]here the devised property is conveyed away by someone other than the testator, no ademption occurs under the intent theory." *Bollman*, 352 Ill. App. 3d at 1207. In the case before it, the court found:

> "In this case, [the father] left to [the son] his stock in the [corporation] and the debts the corporation owed him. [The son's] actions as trustee cannot cause an ademption of [the father's] bequest, so under the trust's provisions [the son] should receive those assets. The stock and debt have been converted in form into the holdings in the trust's Merill Lynch account, and [the son] must therefore receive the residue of this account." *Bollman*, 352 Ill. App. 3d at 1207.

¶ 44    In the case at bar, plaintiff argues that, like in *Bollman*, no ademption occurred and that the proceeds from the sale represented the value of the membership interests owed to the

20

beneficiaries. Defendants agree that no ademption in the technical sense has occurred, because no acts of John Sr. or Jeanne were involved in the sale of the LLC's property, but nevertheless argue that the membership interests were specific bequests that can no longer be fulfilled. Defendants claim that the change is a change in substance, not of form, and the distribution of the assets is not a substitute for distribution of the interests. We do not find this argument persuasive.

¶ 45    As plaintiff notes, and as we found above, the membership interests can still be distributed according to the schedule of contingent beneficiaries. Upon doing so, plaintiff can then distribute the proceeds from the sale as appropriate. Furthermore, even if the membership interests could not be distributed, *Bollman* demonstrates that their value was converted into the proceeds from the sale of the LLC's property, which then may be distributed to the beneficiaries.[4] Consequently, we cannot find that the trial court erred in directing the distribution of the LLC's assets pursuant to the schedule of contingent beneficiaries in the trust agreement.

¶ 46    Finally, defendants claim that they are entitled to damages under a breach-of-contract theory because John Sr. and Jeanne did not comply with section 10.4(c) of the operating agreement. On appeal, both parties spend most of their time arguing over whether defendants have standing to raise this argument as third-party beneficiaries. However, as the trial court found, even if they did have standing, section 10.4(c) would not provide defendants with a basis for a breach-of-contract claim. As noted earlier in our analysis, neither John Sr. nor Jeanne were members of the LLC at the time of their deaths. Thus, even if they had complied

---

[4] Defendants suggest that membership would give them certain rights that are no longer available. However, we note that the operating agreement leaves most of the authority in operating the LLC to the manager.

with the terms of section 10.4(c), they would not own any membership interests in their individual capacities to bequeath to defendants. Instead, John Sr. and Jeanne assigned all interest in the LLC to the trust. Defendants do not explain how requiring the assignment of nonexistent interests would support a claim for breach of contract, and we cannot find that the trial court erred in finding that section 10.4(c) did not provide a basis for defendants' breach-of-contract claim.

¶ 47                                    CONCLUSION

¶ 48     For the reasons set forth above, we affirm the trial court's judgment. First, the terms of the operating agreement do not preclude distribution of the LLC's membership interests pursuant to the trust agreement. Second, plaintiff was able to distribute the membership interests according to the schedule of contingent beneficiaries even during the winding-up process and was permitted to distribute the LLC's assets pursuant to that schedule. Finally, defendants have no basis for a breach of contract claim where John Sr. and Jeanne did not retain any membership interests in the LLC at the time of their deaths.

¶ 49     Affirmed.