NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240725-U

NO. 4-24-0725

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BRENT ALSMAN and DON WETTSTEIN As Cotrustees of the RICHARD B. OWEN MARITAL TRUST, | ) ) ) ) | Appeal from the Circuit Court of McLean County No. 23CH21 |
| Petitioners-Appellees, | ) ) | |
| v. | ) ) | |
| DEANNE COLLEDGE, an individual, | ) ) | Consolidated with |
| Respondent-Appellant, and | ) ) | No. 23LA65 |
| BRENT ALSMAN, an individual, FRANCES M. OWEN, an individual, and ANDREA BEYER, an individual, | ) ) ) ) | |
| Respondents-Appellees. | ) ) ) | Honorable Mark A. Fellheimer, Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed the trial court's grant of summary judgment to the cotrustees on their petition for instructions in relation to the administration of a trust, concluding the trust agreement (1) unambiguously and without limitation allows them to sell and encumber trust property designated as specific bequests during the life of, and for the benefit of, the grantor's wife and (2) does not require them to maintain or invest the proceeds of such sales for the benefit of the beneficiaries. The appellate court also concluded the grantor waived the cotrustees' duty of undivided loyalty to the trust beneficiaries by implication.

¶ 2    In May 2023, petitioners, Brent Alsman and Don Wettstein, as the cotrustees of a marital trust, filed a petition for instructions from the trial court in relation to the proper

- 1 -

administration of the trust. In October 2023, petitioners filed a motion for summary judgment on their petition. In April 2024, the court granted summary judgment in favor of petitioners. The court found the language of the trust agreement unambiguously permitted petitioners, for the benefit of the grantor's wife, to sell and encumber trust property which was the subject of a specific bequest and did not require them to maintain or invest the proceeds of such sales for the benefit of the beneficiaries. Respondent, Deanne Colledge, appeals, arguing the court erred in granting summary judgment and the pertinent provisions of the trust are ambiguous and require extrinsic evidence for their interpretation. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                    A. The Creation of the Richard B. Owen Revocable Trust

¶ 5             Frances M. Owen was married to Richard B. Owen. They had three children—Alsman, Colledge, and Andrea Beyer. On June 13, 2011, Richard established the Richard B. Owen Revocable Trust. Richard died on November 4, 2011.

¶ 6             Under the terms of section IV of the trust agreement, the trustee, upon Richard's death, is to "divide and hold or distribute the remaining Trust Property, including but not limited to all property bequeathed and devised to the Trustee by [Richard's] last will and testament," in the manner Richard instructed. Through section IV(A), Richard instructed that the trustee was to distribute all of his shares of stock in various businesses to Colledge if she survived him. Through section IV(B), Richard instructed that the trustee was to distribute Richard's residential real estate in Bloomington, Illinois, and Fort Lauderdale, Florida, as well as his interest in a business in Florida and the real estate on which the business operated, to Frances. Upon Richard's death, and pursuant to section IV(C), entitled "Marital Trust," if Frances survived Richard, the trustee was to "set aside the remaining Trust Property as the Marital Trust" for the benefit of Frances. Alsman

and Colledge, who were to serve as successor cotrustees, were to "administer and distribute the Marital Trust" during the remainder of Frances's life, as specified in sections IV(C)(1) and IV(C)(2), which provide:

> "(1) During the lifetime of the Grantor's wife, Frances M. Owen, the Trustees shall pay the net trust income to the Grantor's wife in installments not less frequently than quarterly. In addition, the Trustees may pay such portions of the trust corpus of the Marital Trust, if needed, as the Trustees shall deem necessary and appropriate in the exercise of the Trustees' discretion for the health, support, medical care and maintenance of the Grantor's wife.

> (2) During her lifetime, the Grantor's wife shall have the authority to direct the Trustees to convert any Trust Property held in the Marital Trust to income-producing property if such property is not then producing reasonable income."

¶ 7 Section IV(C)(4) provides, following Frances's death, "the Trustees shall administer and distribute the remaining Trust Property of the Marital Trust in accordance with the following Section IV(D)." Section IV(D) provides, in pertinent part:

> "D. Upon the death of the Grantor's wife, Frances M. Owen, *** the Trustee shall, to the extent the Trust Property includes such assets, distribute the following Trust Property to the persons indicated:

> (1) The Trustee shall distribute to the Grantor's daughter, Deanne M. Colledge, if she is then living, the [designated] real estate

located [in] Bloomington, Illinois, the [designated] real estate located [in] Fairbault, Minnesota, and the [designated] real estate located in Bloomington, Illinois, on which Dutch Gardens USA, Inc., conducts its business.

(2) The Trustee shall distribute to the Grantor's daughter, Andrea Owen Beyer, if she is then living, the [designated] real estate located [in] Bloomington, Illinois; all interests in Greystone Investments; all interests in Andrea's Las Olas Linens; and all interests in the real estate in Ft. Lauderdale, Florida, on which Andrea's Las Olas Linens conducts its business.

(3) The Trustee shall distribute to the Grantor's son, Brent R. Alsman, if he is then living, all interests in Grundy County Bank, Morris, Illinois.

(4) The Trustee shall divide the Trust Property remaining after the performance of the foregoing provisions of this Section IV(D) into equal shares, one such equal share for the Grantor's daughter, Andrea Owen Beyer, if she is then living or for her collective issue if she is not then living but has issue then living, one such equal share for the Grantor's son, Brent R. Alsman, if he is then living or for his collective issue if he is not then living but has issue then living, and one such equal share for the Grantor's daughter[,] Deanne M. Colledge, if she is then living or for her collective issue if she is not then living but has issue then living."

¶ 8        Section IV(G) specifies how property of the Marital Trust is to be distributed "[i]n the event that the Trust Property shall be insufficient to fully fund all of the distributions provided in the foregoing provisions of *** Section IV." As pertinent to this appeal, section IV(G)(1) provides:

> "(1) If the Grantor's wife, Frances M. Owen, survives the Grantor, the distributions shall be reduced or abate as follows:
>
> (a) First, the Trust Property set off under Section IV(C) shall abate.
>
> (b) In the event the Trust Property set off under Section IV(C) shall be fully abated, then the distributions provided in Section IV(B) shall abate.
>
> (c) In the event the Trust Property set off under Sections IV(C) and IV(B) shall be fully abated, then the distributions provided in Section IV(A) shall abate."

¶ 9        Section VII specifies the powers granted to the trustee for the administration of the Marital Trust. As pertinent to the instant appeal, section VII provides:

> "A. The Trustee is authorized and empowered, at any time and from time to time, to sell, assign, transfer, lease, mortgage, pledge and convey, in the Trustee's discretion, any part or all of the Trust Property ***.
>
> B. The Trustee is authorized to borrow money from any recognized lending agency *** to provide for the improvement or rehabilitation of any real estate belonging to any trust, and for such

- 5 -

purposes to pledge, mortgage, or otherwise encumber any or all of the Trust Property.

C. The Trustee is further specifically authorized and empowered to invest and reinvest the Trust Property at any time, and from time to time, *** as the Trustee shall deem best to produce reasonable income ***."

¶ 10    B. The Cotrustees' Petition for Instructions in Relation to the Marital Trust

¶ 11    On May 30, 2023, petitioners Alsman and Wettstein filed a "Petition for Instructions Pursuant to 760 ILCS 3/201." (Colledge resigned as cotrustee at some prior point.) This enactment permits a trial court to "adjudicate any matter arising in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law." 760 ILCS 3/201(a) (West 2022). Such a proceeding "may relate to any matter involving the trust's administration, including a request for instructions." *Id.* § 201(c).

¶ 12    Petitioners asserted that pursuant to Frances's direction and "their own powers," they have sold real estate that would be "the subject of a specific bequest to a beneficiary, provided that the real estate is owned by the Marital Trust at the time of [Frances's] passing." Petitioners sought instruction from the trial court for the proper administration of the Marital Trust in light of the contentions of respondent Colledge. First, "Colledge disputed the Co-Trustees' authority to sell any property identified in Section IV(D)(1) and has disputed that the proceeds of any property sold should be combined with the Marital Trust's residuary." Second, "Colledge, through counsel, ha[d] stated the position that the specific bequests to her in Section IV(D)(1) of the Trust include[d] the specific real estate described therein and, if the real estate is sold, then proceeds of that real estate shall be separately managed and invested by the Co-Trustees." Finally, Colledge had

"expressed concern that encumbering an asset that is the subject of a specific bequest in Section IV(D)(1-3) should not occur because it may negatively impact the distribution to be received upon [Frances's] passing."

¶ 13　　　　The instructions requested regarding Colledge's first and second contentions were:

"(i) Do the Co-Trustees have authority to sell the specific bequests contained in Section IV(D)(1-3) of the Trust during [Frances's] life and, if so, is there any limitation on that authority?

(ii) In the event [Frances] directs the Co-Trustees to sell non-income producing property, must the Co-Trustees follow that direction?

[(iii)] If property is sold that is the subject of a specific bequest as set forth in Section IV(D)(1-3), do the Co-Trustees have an obligation to separately maintain and invest those funds for the benefit of the beneficiary of the specific bequest that was sold?

[(iv)] Alternatively, if property is sold that is the subject of a specific bequest as set forth in Section IV(D)(1-3) do the proceeds of that sale become part of the residuary of the Marital Trust to be distributed [*pro rata*] pursuant to Section IV(D)(4) after [Frances's] death?"

Regarding Colledge's third contention, petitioners requested "instruction as to whether there is any limitation on their right and authority to pledge and encumber property that is the subject of a specific bequest in Section IV(D)(1-3)."

¶ 14            C. Motion for Summary Judgment on the Petition for Instructions

¶ 15            On October 16, 2023, petitioners filed a motion for summary judgment related to their petition for instructions. Petitioners contended the cotrustees were authorized to sell, pledge, and encumber trust property when Frances directed. Additionally, if a specific bequest was sold, the proceeds would be invested in the general corpus for a *pro rata* distribution pursuant to section IV(D)(4). It was their position that any other interpretation would harm the beneficiary. Petitioners maintained the Marital Trust placed no "limitation on [Frances's] authority to direct the Trustees to convert non-performing Trust property to income producing property." Colledge's concern with receiving her specific bequests did not constitute a limitation. The plain language of the Marital Trust provided that the specific bequests were contingent upon the beneficiary surviving Frances and the particular asset being owned by the Marital Trust at the time of Frances's death. Petitioners claimed, pursuant to section IV(C)(1), they "ha[d] an immediate obligation to pay [Frances] the net income of the Trust and may, at their discretion, apply the Trust's corpus to provide for [her] support, medical care, and maintenance."

¶ 16            D. The Trial Court's Ruling on the Motion for Summary Judgment

¶ 17            The trial court delivered an oral ruling, framing the fundamental issue as "whether or not there is ambiguity within the context of the trust itself and whether or not certain powers are there." The court noted if an ambiguity was found, the motion for summary judgment would be denied and the court would have to interpret the trust. The court focused on section VII, which outlined the powers of the trustee, which the court declared were clear and unambiguous. The court also found that section IV(D), providing for specific bequests, was not ambiguous and did not contain provisions for equal distributions if the Marital Trust ceased to exist. Moreover, to the extent trust assets being sold for the benefit of Frances pursuant to section IV(C)(2) may have been

inequitable, it was not ambiguous. The court noted it could not invoke equity and while the terms of the trust may be unfair, such was not an issue for the court.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 Colledge contends the trial court erred in granting summary judgment to petitioners. First, Colledge argues the court erred in concluding the Marital Trust did not limit petitioners' ability to sell or encumber trust assets. Second, Colledge asserts that pursuant to this court's decision in *Bollman v. Pehlman*, 352 Ill. App. 3d 1203 (2004), "when the terms of the Marital Trust are construed as a whole, the proceeds of the sale or encumbrance of any Marital Trust property which is subject to a Specific Bequest must remain subject to [Richard's] Specific Bequest to the beneficiary." Finally, Colledge proposes that this court should vacate the trial court's ruling, "as the conflicting interests of the beneficiaries of the Marital Trust create ambiguities in the terms of the Marital Trust which must be construed via extrinsic evidence."

¶ 21 When a court interprets a trust, the same rules of construction that apply to construing wills and other contracts applies. The main goal is to give effect to the settlor's intent, which must be determined from the plain and ordinary language of the trust document. The court should not adopt a construction that renders any portion of the document meaningless, and extrinsic evidence may not be admitted to aid in the construction unless it has been determined the document is ambiguous and the court cannot ascertain the settlor's intent. "A trust instrument is ambiguous only when its language is reasonably or fairly susceptible to more than one interpretation and not merely because the parties disagree on the meaning of the language." *Hill v. Brinkman*, 2023 IL App (3d) 220394, ¶ 18.

¶ 22 Summary judgment is appropriate "where the pleadings, depositions, admissions

on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law." *Id.* ¶ 16. An appellate court applies a *de novo* standard of review to appeals from summary judgment rulings in general, "perform[ing] the same analysis that the trial court would perform." *Id.* More specifically, "[*d*]*e novo* review also applies to issues of trust interpretation, which are considered to be questions of law that are appropriate for determination in summary judgment proceedings." *Id.*

¶ 23        A. The Terms of the Marital Trust Unambiguously and Without Limitation Allow
the Cotrustees to Sell and Encumber Trust Assets

¶ 24        Colledge argues the trial court erred in concluding the Marital Trust did not limit petitioners' ability to sell or encumber trust assets. Colledge contends that while the Marital Trust permits a trustee to encumber assets, "[Richard's] provision of the Specific Bequests in the Marital Trust provides an inherent limitation on the [trustee's] power to encumber those Specific Bequests." Colledge also contends the court ignored the limitations on a trustee's ability to sell property subject to a specific bequest imposed by section IV(G)(2) of the Marital Trust. According to Colledge, "Section IV(G)(2) demonstrates an intent by [Richard] that distribution of the Specific Bequests to the beneficiaries is a higher priority than the distribution of the remaining Marital Trust assets to the beneficiaries."

¶ 25        In response, petitioners argue that

"[Frances's] authority to direct the conversion of unproductive
assets, the Trustees['] obligation to provide for [her], and the express
language in [Section] IV(D) which conditions the making of
Specific Bequests only to the extent the Trust Property includes such

- 10 -

*** assets show that [Richard] intended that beneficiaries may be divested of Specific Bequests as a result of the operation of the Marital Trust."

Petitioners contend that "[n]one of the Trust's text limits the Trustees' ability to pledge or encumber Marital Trust property for [Frances's] benefit." (We note that per their separate brief, appellees Alsman, Owen, and Beyer "are aligned with [petitioners'] interpretation of the Trust instrument, and *** affirmatively adopt the arguments set forth in [the cotrustee petitioners'] brief.")

¶ 26    Here, the trial court correctly concluded the pertinent provisions of the trust agreement unambiguously and without limitation allow a trustee to sell or encumber trust assets. Section IV(C)(1) unambiguously obligates the trustee to "pay the net trust income" to Frances during her lifetime and allows the trustee to pay portions of the trust corpus to her if deemed necessary and appropriate for her "health, support, medical care and maintenance." Section IV(C)(2) unambiguously allows Frances to direct the trustee to convert trust property "to income-producing property" so it may generate income which the trustee, per section IV(C)(1), is required to pay her. Importantly, however, while Frances has an unfettered entitlement to the trust income, she does not have the right to direct the trustees to specifically *sell* trust property. (Income may be generated from trust property through another means, such as leasing it.) That Frances does not have the right to demand the trustees *sell* trust property to the exclusion of any other disposition through which income may be generated is contemplated by section VII(F), which provides, in pertinent part, that "[t]he Trustee shall allocate to principal *** all proceeds from the sale *or other disposition* of the trusts' assets constituting principal." (Emphasis added). The trustees can, however, in *their discretion*, elect to sell trust property.

- 11 -

¶ 27        Section VII(A) explicitly "authorize[s] and empower[s]" the trustee, "at any time and from time to time," to "sell *** , mortgage, pledge and convey *** any part or all of the Trust Property," and section VII(B) explicitly permits this for the purpose of "provid[ing] for the improvement or rehabilitation of any real estate" owned by the Marital Trust. Section IV(D) does prescribe a procedure for the distribution of particular trust assets to designated beneficiaries, including Colledge. But by the precise language of section IV(D) (and section IV(C)(4)), this procedure is *only* to be triggered after Frances's death and then *only* "to the extent the Trust Property includes such assets" after whatever dispositions were ordered for Frances's benefit pursuant to section IV(C)(2).

¶ 28        Section IV(G) further illustrates that the primary purpose of the Marital Trust is *Frances's* financial support. The procedure section IV(G)(1) prescribes for the distribution of "reduced or abated" trust assets only "[i]n the event that the Trust Property shall be insufficient to fully fund all of the distributions provided in the foregoing provisions of *** Section IV" only contemplates distributions of the property specified in sections IV(C), IV(B), and IV(A) in that order—not the specific bequests to Colledge (and other beneficiaries) provided in section IV(D). (Section IV(A) provides for Colledge to receive all of Richard's shares of stock in various businesses, but she would be the last to receive this property under the procedure set forth in section IV(G)(1) were it to be executed. Per section IV(G)(1)(c), sections IV(C) and IV(B), dictating distributions to Frances, would take precedence.) Separately, we note that the distribution procedure prescribed in Section IV(G)(2), which Colledge asserts evinces Richard's intent to limit a trustee's ability to sell trust assets subject to specific bequests, is not even applicable to the facts of this case. By its explicit prefatory terms, it only is triggered "[i]f the Grantor's wife, Frances M. Owen[ ], does not survive the Grantor," which did not occur here.

¶ 29                              B. Inapplicability of *Bollman*

¶ 30          Colledge cites this court's decision in *Bollman* for the proposition that "controlling

Illinois law clearly demonstrates that if it becomes necessary for the Co-Trustees to sell a Specific

Bequest, the proceeds of such sale maintain their characterization as Specific Bequests to the

beneficiary to whom [Richard] bequeathed the property that was sold" and must be "held in a

segregated account for the benefit of the beneficiary." In response, petitioners argue no textual

support exists for the proposition Colledge could not be divested of her interest in the proceeds of

the sale of trust property and "there is no authority under the Trust Agreement or in Illinois law,"

including *Bollman*, "to separately maintain that Specific Bequest contrary to the terms of the

Marital Trust."

¶ 31          In *Bollman*, Gordon Pehlman and his son, Donald Pehlman, co-owned a business

called The Pool Center, Inc. (The Pool Center). *Bollman*, 352 Ill. App. 3d at 1204. Pursuant to his

will, Gordon left the majority of his estate, including his entitlement to approximately $254,000

owed to him by the business, to a trust established for the care of his wife. *Id.* at 1204-05. Gordon

named Donald as trustee. *Id.* at 1205. The Pool Center satisfied its debt, and the money was

deposited into a Merrill Lynch investment account, which constituted the entirety of the trust

corpus. *Id.* The Pool Center dissolved. *Id.* Gordon's wife later died and, pursuant to instructions in

his will, the trust was to terminate and Donald was to receive all of Gordon's shares of stock in

The Pool Center and obligations it owed to him, with no specification as to what was to occur if

The Pool Center dissolved. *Id.* The trial court ruled the investment account assets should be divided

evenly between Donald and his sister pursuant to a different provision of the will, as the shares of

stock and obligations Donald was to receive were deemed to no longer exist following the

dissolution of the business. *Id.* This court reversed, explaining the ademption rule operates on

direct bequests and had never been applied to final distributions from a testamentary trust. Thus, when the trial court implicitly extended the ademption rule, it was improper. *Id.* at 1206.

¶ 32 We agree with petitioners in that Colledge "finds common ground with *Bollman* on only two bases—the existence of specific bequests and residuary distribution schemes in both estate documents. Neither of these commonalities are germane to the appropriate analysis here which should focus on the language of the [Marital] Trust." In sum, "*Bollman* is inapplicable and wholly distinct from the issues presented in this case." Unlike the language of the testator's will in *Bollman* directing the distribution to Donald of the shares of stock of and debt obligations owed by The Pool Center without any conditions precedent other than his wife's death, here, the language of the Marital Trust expressly conditions the specific bequests on whether they exist after Frances may have directed the sale of trust assets for her benefit—the very purpose of the Marital Trust. As petitioners explain, "when the language of the [Marital] Trust is considered, as *** Colledge fails to do, it is evident that *Bollman* does not apply and [Richard] intended that Specific Bequests may be divested."

¶ 33 Much like the trial court, "All [we] can go on is what is written here. To [us] it's clear and [un]ambiguous, even though it may not be equitable to those involved." Richard had the right to direct the disposition of his assets as he wished and to "rely on the fact that the court cannot and will not distort the clear language [of the Marital Trust] to achieve a result it prefers to the result [he] desired." *Continental Illinois National Bank & Trust Co. of Chicago v. Bailey*, 104 Ill. App. 3d 1131, 1139 (1982). Richard expressed his directions unambiguously, and just as the trial court could not interpret away the terms of the Marital Trust to permit a distribution of assets that may be deemed more equitable to the beneficiaries, neither can this court. *Id.* at 1138-39.

¶ 34        C. Richard Waived the Cotrustees' Duty of Undivided Loyalty to the

Beneficiaries by Implication

¶ 35        A trustee "is obligated to carry out the trust according to its terms; to act with the highest degree of fidelity and good faith; to serve the interests of the beneficiaries with complete loyalty, excluding all self-interest; and to refrain from dealing with the trust property for his own individual benefit." *Hill*, 2023 IL App (3d) 220394, ¶ 17. However, "[a] trustee's obligation of undivided loyalty may be waived by the settlor of the trust *** by implication, by knowingly placing the trustee in a position that might conflict with the interests of the beneficiaries." *Id.*

¶ 36        Here, Richard waived petitioners' duty of undivided loyalty to the beneficiaries by implication in that he placed them in a position of managing the Marital Trust primarily for Frances's financial benefit by arranging for the disposition of trust assets, even though they were the subjects of specific bequests to the beneficiaries. Indeed, as section IV(D) of the Marital Trust conditions the distribution of the specific bequests on "the extent [to which] the Trust Property includes such assets," it is possible the cotrustees would have to sell all the specified property during Frances's life for her benefit, despite it being the subject of specific bequests to beneficiaries. See *In re Estate of Halas*, 209 Ill. App. 3d 333, 344 (1991) ("It is well established that a trustee may occupy conflicting positions in handling the trust where the trust instrument contemplates, creates, or sanctions the conflict of interest."). Not only was this conflict established by the trust agreement, but there is no basis for concluding this conflict somehow creates an ambiguity in the trust that requires extrinsic evidence for its interpretation, as Colledge contends.

¶ 37                        III. CONCLUSION

¶ 38        For the reasons stated, we affirm the trial court's judgment.

¶ 39        Affirmed.